THE STATE OF KANSAS v. NEWMAN BROWN.

1. RAPE — *Unchastity of Prosecutrix.* Upon a charge of rape, testimony that the general reputation of the prosecutrix for chastity is not good is competent, but testimony of specific acts of unchastity is not competent to prove her probable consent to sexual intercourse with the defendant.

2. DEPOSITIONS, *Suppressed — Continuance, Refused — Error*. On June 8, under a stipulation made between the attorneys for the state and for the defendant, the depositions of nine witnesses were taken in Oklahoma city in behalf of the defendant, and, for the convenience of both parties, it was agreed that the depositions should be taken in shorthand, and, after being transcribed by the stenographer, they should be signed by the witnesses before the notary public and forwarded to Kansas. On June 11, court convened, and the case in which they were taken was called for trial. The depositions had not been received, and the defendant objected to proceeding to trial until they were received. A telegram was received that the depositions had been forwarded, and the court, in expectation that they would arrive in time to be used on the trial, overruled the protest and proceeded with the trial of the cause. They were received before the testimony of the state had been closed, but afterward the court, upon motion of the state, suppressed the depositions because they did not appear to be correctly transcribed by the stenographer. The defendant asked leave to prepare and present a statement setting forth what the testimony of the witnesses actually was, in order that the state might admit the same to be their testimony, and in the event that the state would not consent that such statement should be read as the testimony of the witnesses, that the case should be postponed a sufficient length of time to have the depositions returned to the notary and properly transcribed or retaken. This

application was denied, as was also one for leave to file an affidavit setting forth what diligence had been used in the taking of the depositions, the materiality and truth of the testimony, and that their testimony could be and would be procured and produced if a continuance of the cause was allowed. *Held*, That the testimony being competent and important for the defendant, the refusal of any opportunity to obtain or use the same, was, under the circumstances, prejudical error.

3. RIGGISH REPUTATION, *Quickly Gained*. It cannot be said, as a matter of law, that a woman who openly and flagrantly solicits sexual intercourse with quite a number of men during her stay in a small town cannot acquire a general reputation for unchastity in that community within a period of 24 hours.

*Appeal from Ford District Court.*

PROSECUTION for rape. All the material facts are stated in the opinion herein, filed November 9, 1895.

*H. J. Bone*, for appellant.

*F. B. Dawes*, attorney general, *J. M. Kirkpatrick*, and *Ed. H. Madison*, for The State.

The opinion of the court was delivered by

JOHNSTON, J. : Newman Brown was convicted upon a charge of rape, and sentenced to confinement at hard labor in the penitentiary for a term of 15 years. The offense was alleged to have been committed at Dodge City, upon the person of Sophronia M. Lewellen, who, with her husband, was traveling through the state from Colorado to Oklahoma. She stated that, on the evening of her arrival at Dodge City, she met the defendant, who compelled her and her husband to accompany him to a room in another part of the city, and that, after driving her husband out of the room, the defendant compelled her to submit to his embraces. Upon the trial the defendant admitted that he had sexual intercourse with Mrs. Lewellen, but contended that it was with her consent and at her

solicitation. He claims that the room to which they went was on one of the principal streets and within two or three blocks of the business center of the city, and also that, in going to the same, in the early part of the evening, they passed the principal business houses of Dodge City. It appeared at the trial that she went to Oklahoma in 1889, and resided at several places in that territory until June 28, 1894, when she was married to Austin Lewellen, at Kingfisher. After her marriage they went in a wagon, first to Hennessey, from there to the Chickasaw Nation, thence to Purcell, and from Purcell they started across the country for Denver in their wagon, camping at various places between those points. They arrived in Denver about the 1st of November, where they remained for a few weeks, when they concluded to return to Oklahoma. Having lost their team, they walked to Pueblo, and caught rides on freight-trains from that place to Dodge City, where they arrived on the evening of January 17, 1895.

The conviction rests largely upon the testimony of Mrs. Lewellen, and the defendant endeavored to show that her general reputation for chastity during the four or five years she lived in Oklahoma was bad, and also that her general reputation for truth and veracity was bad. To that end, depositions were taken in Oklahoma on June 8, 1895, which was during the week preceding the beginning of the term when the case was assigned for trial. The depositions were taken in pursuance of a stipulation made by the attorneys for the state and for the defendant, waiving the issuance of a commission and all objection to the official character of the officer taking the same. On June 8, 1895, counsel for the state and defendant being present in Oklahoma City, it was agreed

that the depositions should be taken in shorthand, and, after being transcribed by the stenographer, they should be signed before the notary public as soon as practicable, and, when so transcribed and signed, should be accepted as the depositions of the witnesses to be used upon the trial. The formality of the statute requiring them to be reduced to writing in the presence of the witnesses was waived. In pursuance of this agreement, the depositions of nine witnesses were taken, when counsel for both parties returned to Kansas, after leaving directions for the completion of the depositions and their transmission to the clerk of the district court of Ford county, Kansas. When court convened on the 11th day of June, 1895, the depositions had not arrived, and, upon the request of the defendant, the cause was passed over until the following day. When the case was called on the next day, the depositions had not been received, and the defendant protested against proceeding to trial until they arrived; but a telegram having been received that the depositions had been forwarded, the court, in expectation that they would arrive in time to be used on the trial, overruled the protest, and proceeded to the trial of the cause. They were received by the clerk of the court on the 14th day of June, and before the testimony for the state had been completed. Afterward the court suppressed the depositions, upon the ground that they did not appear to be correctly transcribed by the stenographer, and that upon the face of the depositions they did not give a correct statement of the questions propounded to or the answers given by the witnesses. The defendant then asked leave to prepare and present a statement setting forth what the witnesses whose depositions had been taken actually testified to, in order that the state might

49—55 KAS.

have the opportunity to admit the same as the depo-
sitions of the witnesses, and in the event that the
state refused to admit such a statement to be the tes-
timony of the witnesses, the defendant might then
have a continuance of the cause a sufficient length of
time to have the depositions returned to the notary
and properly transcribed or retaken. This request
was overruled by the court. The defendant then
moved the court for leave to file an affidavit setting
forth what diligence had been used in the taking of
the depositions ; that the testimony of the witnesses
was material ; that the defendant believed the same
to be true ; and, further, that if there was a continu-
ance of the cause, their testimony could and would be
procured and produced. The motion was denied, and
the defendant was compelled to proceed without the
testimony of these witnesses. Under the circum-
stances, the denial of any opportunity to
obtain or use that testimony was prejudi-
cial error. The testimony was competent
and material, and the nature of the case
was such that it was about all the corroborative testi-
mony which could be procured for the defendant.
It tended to show that Mrs. Lewellen had been an
unchaste woman, and the inmate of a house of ill-
fame ; that her general reputation for chastity was
bad ; and, further, that her general reputation for
truth and veracity was not good.

2. Depositions,
suppressed—
continuance,
refused—
error.

A question is raised as to the diligence of the de-
fendant, and it is said that he might have begun the
taking of the depositions at an earlier date. If they
had been taken and transcribed in the usual way, they
probably would have been received in good time ; but
to accommodate the state and the defendant, short-
hand notes of the testimony were taken, and by agree-

ment were to be written out at length, signed and then forwarded to the court. The errors in transcribing, if they were at all material, did not arise through any fault of the defendant. Neither the state nor the defendant had any occasion to anticipate the errors, and manifestly both expected that the depositions would be correctly transcribed and forwarded in good time.

It is argued that the defendant was in fault because he did not ask for a continuance before the trial was begun. Such an application at that time would hardly have been received with much favor. The testimony had been taken in the presence of counsel for the state, and a message had been received that the depositions were then on the way, and all expected that they would be received within a day or two. The judge, expecting that they would come to hand before the state would rest its case, directed the trial to proceed. If the depositions were unfit for use as testimony, the subsequent application should have been allowed. The testimony having been taken in the presence of counsel for both parties, the errors could have been readily corrected; and if a statement of the testimony had been reduced to writing, it is probable that the state would have admitted the same as the depositions of the witnesses, and no delay of the trial would have been occasioned. The defendant, however, was refused an opportunity to file an affidavit as to diligence, the materiality and importance of the testimony, or to make any showing for a postponement of the case until the depositions could be properly transcribed or retaken. We think the defendant was entitled to an opportunity to produce this testimony, and that the rulings of the court with respect thereto were erroneous.

Testimony was offered by the defendant to the effect

that while the Lewellens were camped near Cimarron, where they staid from the evening of one day until some time of the following day, the prosecutrix was guilty of specific acts of lewdness and unchasity ; that she offered to have sexual intercourse with several persons for a consideration, and that her husband endeavored to bring persons to her for that purpose. The court rightly excluded this testimony. Specific acts of unchasity are incompetent to prove probable consent to sexual intercourse with the defendant. A woman is presumably prepared to defend her general reputation for chastity, but there is no presumption that she is always prepared to disprove specific accusations of that character. (*The State v. Bryan*, 34 Kas. 63 ; 3 Am. & Eng. Encyc. of Law, 158.)

1. Rape—unchastity of prosecutrix.

Four witnesses were introduced, who stated that they knew the general reputation of the prosecutrix for chastity at Cimarron. This testimony was excluded, the court holding that a woman could not gain a reputation in a community or neigborhood where she had not resided more than 24 hours. Reputation is the opinion of a person's character generally entertained by those who know him or her, and where such reputation exists, it is a fact to which anyone acquainted with it may testify. There is no fixed time within which a reputation may be gained. Considerable time is necessarily required to establish a reputation for truth and veracity, but a reputation for unchastity may be acquired in a much shorter time, and especially in a small town like Cimarron. As the prosecutrix was traveling over the country, her stay in any place was necessarily short, but if all that was proposed to be proved concerning her conduct at Cimarron was true, she may have

gained considerable notoriety in 24 hours. Her actions may have been so open and flagrant that a fair estimate of her character for chastity may have been obtained and generally held by the people of that small town. At any rate, we think it cannot be said as a matter of law that she did not acquire a general reputation for unchastity in a community within 24 hours, or even within a briefer time. Of course, it is not enough that a witness says he is acquainted with the general reputation of a person to entitle him to testify ; and before his opinion is received, a full inquiry should be permitted by the court as to whether a general reputation exists, and as to the competency of the witness to testify concerning it.

The other objections to rulings upon the testimony are not deemed to be material, but for the errors which have been mentioned the judgment must be reversed, and the cause remanded for a new trial.

All the Justices concurring.