THE ORDER OF UNITED COMMERCIAL TRAVELERS OF
AMERICA V. EZEKIEL BARNES.

No. 14,145.    (80 Pac. 1020.)

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*Verdict Contrary to the Evidence.* A fraternal order made a contract with a member to indemnify him in case of accident for injury sustained by violent means which should, "independently of all other causes, immediately, wholly and continuously prevent him from the prosecution of any and every kind of business pertaining to his occupation." The insured, who was a wholesale grocer, swallowed a metal pin on July 23, 1902, which at once caused him much distress. He went to his place of business nearly every day until August 4, when he became wholly disabled. Between the dates mentioned he assisted in buying goods and selling them for future delivery, and attended to business in the usual manner, with the exception of two or three days. In his verified demand on the order for payment of indemnity he claimed a total disability from August 4. *Held,* that a finding by the jury that the insured was wholly and continuously disabled from attending to every kind of business pertaining to his occupation after July 23 was not sustained by the evidence. (See p. 306.)

2. ——— *Total Disability.* The scope of the term "total disability," used in contracts of indemnity against injury by accident, considered and discussed.

3. ——— *Immediate Disability.* The word "immediately," as applied to the language of the indemnity contract stated in the first paragraph of this syllabus is not synonymous with "instantly," "at once," and "without delay." A disability is immediate, within the meaning of such contracts, when it follows directly from an accidental hurt, within such time as the processes of nature consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. First opinion filed May 6, 1905. Reversed. Rehearing allowed June 10, 1905. Second opinion filed December 9, 1905. First opinion affirmed.

## STATEMENT.

ON July 23, 1902, defendant in error was a member in good standing of the Order of United Commercial Travelers of America. One of the objects of the order, as expressed in the by-laws, is "to establish an 'indemnity fund' to indemnify its members for total disability or death resulting from accidental means." Section 8 of the by-laws, which it is agreed is binding on the assured, contains this provision:

"If said member shall sustain bodily injury by means aforesaid, which shall, independently of all other causes, immediately, wholly and continuously disable and prevent him from the prosecution of any and every kind of business pertaining to his occupation, he shall, upon furnishing satisfactory proofs of such injuries, be indemnified against loss of time thereby in a sum not exceeding twenty-five dollars for each consecutive week he is thus disabled as shall immediately follow the injuries and accident aforesaid, but not exceeding fifty-two weeks by reason of the same accident, which sum shall be due and payable within sixty days after the receipt of satisfactory proofs, on blanks furnished by the order, at the end of the disability complained of, provided such sum shall not exceed the proceeds of one assessment of not more than two dollars on each member of the order."

It is expressly stated in the same section of this by-law that the order shall not be liable to pay indemnity for any bodily injury happening directly or indirectly in consequence of disease.

On the evening of July 23, 1902, defendant in error was taken sick at the dinner-table, the illness being immediately followed by vomiting. There were present at the time his wife and little girl, and Mrs. Nathaniel Barnes, his sister-in-law. Defendant in error was not confined to his bed until August 4, and about that time called a physician. He suffered much pain from that time. On October 1, 1902, Doctor Stemen, who had attended him for the first time three days before, discovered a metal pin in the vomit of his patient, which

he had emitted from his stomach. It was encased in a mucous or serous membrane, which the doctor estimated would take three or four months to form. After emitting the pin defendant in error improved in health. He made a claim on defendant below for indemnity at the rate of twenty-five dollars a week for the time of his disability. The relevant parts of the formal, verified statement of his claim, made to the order, read:

"(6) Give name and address of attending physician. Ans. Dr. C. M. Stemen.

"(7) When did you first consult a physician? (Give date.) A. About August 1, 1902.

"(8) How long were you wholly disabled, in consequence of said injury, from the prosecution of any and every part of your business? (Give the length of time and between what dates.) A. From August 4, 1902, to March 21, 1903, 230 days; am still unable to attend to business.

"(9) How long were you actually confined to the house? A. From August 4, 1902, to November 6, 1902."

A refusal of plaintiff in error to pay was followed by an action against it for $1300 and interest. Plaintiff below did not testify in his own behalf at the trial. Two witnesses testified respecting his physical condition between July 23, 1902, when he was first taken sick, and August 4, when he took to his bed. Nathaniel Barnes, a brother of the plaintiff, testified that until June 17, 1902, plaintiff had been in charge of the city business for Long Brothers, wholesale grocers in Kansas City, eighteen years. He was one of a number of persons who, in the same month, organized a wholesale grocery house known as the Kansas City Wholesale Grocery Company. He was one of the stockholders. The exact answers of the witness given on cross-examination follow:

"Ques. You don't recall his being sick at any time prior to August 4, 1902, within one year back? Ans. I don't know of any sickness.

"Q. You don't know of any? A. No, sir; not of any consequence.

"Q. While Mr. Barnes was in health was it your habit and custom to see him every day and every week? A. Pretty near it—not every day.

"Q. Would there sometimes weeks elapse without your seeing him? A. Hardly, that I would not hear or know something about him.

"Q. I say, would there be a week elapse without your seeing him? A. Not if he was in the city—hardly.

"Q. You don't remember of any sickness within a year prior to August 4, 1902, during which Mr. Barnes suffered from diarrhea and vomiting? A. Not that I know of, sir. . . .

"Q. You don't know of any? A. I don't know of any sickness—any special sickness.

"Q. You say that he complained to you of not feeling well? A. Yes, sir.

"Q. When was that? A. Well, that was after he left Long Brothers and they had completed this organization. They were purchasing the stock.

"Q. Buying goods? A. Yes, sir; and he was looking the stock over.

"Q. Well, when did he leave Long Brothers? A. Well, I think it was about the 17th of June, 1902.

"Q. How long after that was it that he complained to you of feeling sick? A. Well, he came over to my store every day or two, and he said he was not very well; and then on Sunday—they were to open the new house on the 4th of the month—the 4th of August—then is when he complained. (Mr. Berger: "I desire to strike that out as not proper cross-examination, incompetent, irrelevant, and immaterial; this is prior to the time of August 4." [No ruling.] Mr. Rosenberger: "Do you contend that he was not sick before August 4?" Mr. Berger: "Why, I don't know anything about it, and I care less." Mr. Rosenberger: "Well, I care a good deal. If it is conceded that he was not sick before August 4, 1902, let that concession go into the record." Mr. Berger: "Well, if you have a defense to make, make it. Don't try to make your defense from me. . . . We move to strike out all the answer of the witness to any question pertaining to any—" The court: "Well, it may stand. Proceed.")

"Q. You say he left Long Brothers June 17? A. That is about the date, I think.

"Q. When, in reference to that date, did Mr. Barnes first complain to you of feeling sick? A. Well, it was probably a week or so. Immediately after he left Long Brothers he was very well, able to make all contracts and the deals, and help frame the organization and the business, and about a week or ten days before he took down, why, he complained; he complained each day, and I did not want him to go over and interest himself. I wanted him to take a rest, and on Sunday—they were to open on the 4th, and my wife and I visited them—

"Q. Did he go over nevertheless and assist in buying goods? A. Yes, sir. I think he went over nearly every day. (Mr. Berger: "Now, we would like to have that time confined.")

"Q. He has confined it. He said it was within ten days before August 4. Did you not? A. Something like that. It may have been a little longer.

"Q. You say he did go over every day? A. I think he managed to drive over and back.

"Q. Do you know whether or not he was over there at the store familiarizing himself with the stock of this new concern? A. That would be the object of his—" (Mr. Berger: "Now, wait a minute. Do you know of your own knowledge?") A. Yes, I have saw him in the broker's office.

"Q. What would he be doing there—attending to business? A. No, he was simply looking over their purchases.

"Q. Whose purchases? A. The purchases of the wholesale grocery company.

"Q. When was it that you saw him there? A. Well, it was previous to their opening—probably eight or ten or fifteen days, somewhere along there. I was down there a couple of times, and their men were all there.

"Q. It was eight, ten or fifteen days prior to the new firm's opening? A. Yes, sir.

"Q. And that was on August 4, 1902? A. Yes, sir.

"Q. At that time this new firm was not in a position yet to sell any goods, was it? A. Yes, sir; he was selling some goods too.

"Q. During that time? A. Yes, sir; he was selling futures.

"Q. That is, future orders? A. Yes, sir."

Mrs. Barnes, wife of the preceding witness, who was present on July 23, when plaintiff was taken sick, testified:

"He was not well a day after that. Did not look well from that on, was complaining—was sick from that on—not taken to his bed for some time after that, on August 4. No personal knowledge that he attended to business. I think he did transact some business between July 23 and August 4—while he was sick, too, all the time. I saw him at church on August 3, at Sunday-school. He left because he was sick. I don't remember seeing Mr. Barnes between July 23 and August 3."

On behalf of defendant below a Mr. Bucher, who was in the employ of the Kansas City Wholesale Grocery Company, testified that that concern began business on August 4, 1902; that for a space of five or six weeks prior to that time Mr. Barnes was assisting in starting the business; that on the Saturday prior to August 4 he was at the office of the company familiarizing himself with the goods it was buying; that he participated to the same extent as the others; that for two or three days he was not at the store on account of being a little sick, or "under the weather"—this was a short time before August 4; that he went to the office after this period of sickness, and on the Saturday before August 4 took dinner with the witness and others at a restaurant, and that he was attending to his usual duties, which were not hard.

The court instructed the jury that in order to recover plaintiff must show that he sustained a bodily, accidental injury, and that the same was effected through external and violent means, independent of all other causes, which immediately, wholly and continuously disabled and prevented plaintiff from the prosecution of any and every kind of business pertaining to his occupation. The eighth and ninth instructions were as follow:

"(8) The defendant did not insure the plaintiff against even a total loss of business time, unless such

loss of time followed immediately after the injury, if any, and as a result thereof; and unless said total loss of time was continuous from the time of the injury to the time the plaintiff was able to begin or did begin to attend to part of his business duties. If, therefore, you believe from the evidence that any loss of time suffered by the plaintiff neither immediately followed the injury nor was continuous or total, your verdict must be for the defendant.

"(9)   The term 'immediately,' as used in these instructions, means within a reasonable time, taking into consideration all the facts and circumstances as disclosed by the evidence, and does not mean at once, or forthwith, at all events, leaving out of consideration such circumstances as disclosed by the evidence which tend to give a reasonable excuse for reasonable delay."

Two particular questions of fact, and the answers thereto returned by the jury, are material in the consideration of the case.   They follow:

"(1)   Did plaintiff swallow a pin?   Ans. Yes."

"(6)   If your answer be 'yes' to question No. 1, state on what date, after swallowing the pin, the plaintiff became wholly and continuously disabled from attending to every kind of business pertaining to his occupation.   A. July 23, 1902."

The verdict and judgment were for plaintiff, of which defendant complains.

*J. C. Rosenberger*, and *Kersey Coates Reed*, for plaintiff in error.

*A. L. Berger*, and *Winfield Freeman*, for defendant in error.

The opinion of the court was delivered by

* WILLIAM R. SMITH, J.:   The contract for indemnity, entered into between the Order of United Commercial Travelers and the insured, provided that the former should be liable only in the event that a member sustained injury by violent and accidental means

* Resigned July 1, 1905, and succeeded on that date by the Honorable SILAS W. PORTER, who was appointed by Governor EDWARD W. HOCH.

which should, "independently of all other causes, immediately, wholly and continuously disable and prevent him from the prosecution of any and every kind of business pertaining to his occupation." It is quite plain that the evidence did not satisfy these conditions of the agreement. It may be conceded that the circumstances tended to prove that the injury to Mr. Barnes was caused by the swallowing of a pin on July 23, 1902, but there is no showing that between that time and August 4 he did not pursue his vocation in the usual manner, except a statement by the witness Bucher that for a day or two he was absent from the store and was not feeling well. Mrs. Barnes's testimony was not based on her personal knowledge of plaintiff's condition between July 23 and August 4. She did not remember of having seen him between those dates. That plaintiff was at his place of business nearly every day assisting in buying goods, looking over the purchases, and selling some goods for future delivery, was testified to by his brother, a witness presumably favorable to plaintiff's side of the case.

There was testimony tending to show that plaintiff was not feeling well, or was "under the weather," a part of this time, but to say that he was wholly and continuously disabled and prevented from prosecuting any and every kind of business pertaining to his occupation would be an unwarranted perversion of the evidence and a contradiction of the solemn assertion made by plaintiff himself before the action was brought. In his verified claim made to the order he stated that his total disability from the prosecution of any and every part of his business began on August 4. The court does not assert, however, that this statement concludes the rights of plaintiff, but regards it as evidentiary only. (*Brendon v. Traders & Travelers' Acc. Co.*, 84 Hun, App. Div. 530, 82 N. Y. Supp. 860.) Not having testified in his own behalf, we are at liberty to presume that, had he done so, plaintiff would have adhered to his sworn statements made to

defendant to obtain payment of his claim. Furthermore, the case seems to have been tried by counsel representing Mr. Barnes on the theory that it was immaterial whether total disability occurred before August 4. In the examination of the witness Nathaniel Barnes, counsel for defendant inquired of one of the plaintiff's attorneys: "Do you contend that he was not sick before August 4?" The other replied: "Why, I don't know anything about it, and I care less."

In *Smith v. Select Friends*, 62 Kan. 75, 61 Pac. 416, 53 L. R. A. 934, the court had before it a case where a member of a fraternal order was entitled to payment of a benefit for disability by accident when he became "totally and permanently disabled from following his usual or regular business, occupation, or profession." By an accidental discharge of a gun the insured, who was a druggist, lost his left arm, which was amputated at the shoulder-joint. It was held that no indemnity could be recovered. It was said:

"He cannot recover under the contract of insurance which fixed the right of one party and the liability of the other unless he has sustained a total disability— that is, a complete disability to carry on the business of a druggist." (Page 78.)

Among the cases cited with approval in *Smith v. Select Friends*, 62 Kan. 75, are *Saveland v. The Fidelity & Casualty Co. of New York*, 67 Wis. 174, 30 N. W. 237, 58 Am. Rep. 863, and *Lyon v. The Railway Passenger Assurance Co.*, 46 Iowa, 631. The Wisconsin case notes the distinction between conditions in the agreement providing for the payment of indemnity where the person is immediately and wholly disabled and prevented from the prosecution of any and every kind of business pertaining to his occupation, as in the case at bar, and those contracts for indemnity requiring payment when the insured shall be totally disabled from following his usual business or pursuits. The scope of the latter provision was before the court in *Hooper v. Accidental Death Insurance Co.*, 5 H. &

N. (Eng.) 545, 557, a case relied on by defendant in error, where it was said:

"It appears to us they intended that when the insured was wholly incapable of performing a very considerable part of his usual business he should receive a compensation in respect of that disablement."

Such a construction of the contract in the case before this court would ignore the express words employed by the parties, and make a new contract for them, in which partial disability would suffice to provide indemnity to a person who was insured against injury which should wholly and continuously disable and prevent him from the prosecution of any and every kind of business pertaining to his occupation. (*McKinley v. Insurance Co.*, 106 Iowa, 81, 75 N. W. 670; *Knapp v. Preferred Mut. Accident Assn.*, 53 Hun, 84, 6 N. Y. Supp. 57; *Fidelity and Casualty Co. v. Getzendanner*, 93 Tex. 487, 53 S. W. 838, 55 S. W. 179, 56 S. W. 326; *Bylow v. Union Casualty & Surety Co.*, 72 Vt. 325, 47 Atl. 1066.) The court does not mean to express, however, the opinion that a person holding a contract of indemnity for injury by accident like the one before us could not perform, after his hurt, some small part of his business affairs, such as giving thought to the state or progress of his business and advising others in respect thereto, or even dictating a letter on a matter within his knowledge which might be beneficial to his material interests. To hold otherwise would be to say that complete mental and physical paralysis must ensue from the accident before an indemnifying company would be liable.

We would also hesitate to decide that although the insured person was disabled wholly, in the opinion of medical experts, from transacting any part of his business by reason of the danger to life which might result, yet, if by a strenuous exercise of will power he should overcome his physical infirmities long enough to do something in a spasmodic way toward the prosecution of his ordinary trade, business, or profession,

he would forfeit the indemnity contracted for under an agreement like that in the present case. (*Brendon v. Traders & Travelers' Acc. Co.*, 84 Hun, App. Div. 530.) In the case of *Lobdill v. Laboring Men's Mutual Aid Assn.*, 69 Minn. 14, 17, 71 N. W. 696, 697, 38 L. R. A. 537, 65 Am. St. Rep. 542, it was said:

"But the mere fact that he might be able, with due regard to his health, to occasionally perform some single and trivial act connected with some kind of business pertaining to his occupation as a merchant would not render his disability partial instead of total, provided he was unable, substantially or to some material extent, to transact any kind of business pertaining to such occupation. To illustrate this proposition by reference to the evidence in this case, it appears, as we shall assume, that on one or two occasions where the plaintiff went into his store when down town for other purposes he handed out some small article to a customer, and took the change for it. This would not necessarily prove that he was able to attend to the business of waiting on customers, and that he was not 'wholly disabled' within the meaning of the policy. He might be able, on temporary visits to the store, occasionally to perform a trifling act of this nature, and yet be substantially and essentially unable to transact any kind of business pertaining to his occupation of merchant."

There is a hopeless confusion in the decided cases respecting the question under discussion. They are collected in a note to the case of *Turner v. Fidelity & Casualty Co.*, 112 Mich. 425, 70 N. W. 898, 67 Am. St. Rep. 428, found in volume 38 of the Lawyers' Reports, Annotated, page 529, and again by a writer in volume 35 of the Central Law Journal, page 150. There being a failure of proof showing total disability before August 4, 1902, the answer of the jury to special question No. 6 (set out in the statement) was without support in the evidence.

The only other question which we deem necessary to decide relates to the correctness of the ninth instruction given to the jury. It reads:

"The term 'immediately,' as used in these instruc-

tions, means within a reasonable time, taking into consideration all the facts and circumstances as disclosed by the evidence, and does not mean at once, or forthwith, at all events, leaving out of consideration such circumstances as disclosed by the evidence which tend to give a reasonable excuse for reasonable delay."

In none of the cases referred to by counsel has the word "immediately" been held to be synonymous with "instantly" or "without delay." Such a definition would deprive a beneficiary of all rights under an indemnity contract like the present, unless the hurt or prime cause of the injury were followed by instantaneous disablement. In the case of an accidental taking of poison into the stomach time must be allowed for the deadly substance to affect the human system, and such interim as the processes of nature consume in bringing the person poisoned to a state of disability must be excluded in determining the meaning of the word "immediately." Two persons might receive similar cuts from a knife. One of them might not suffer an injury sufficiently serious to interfere in any degree with his usual business or professional pursuits. The other, while not affected at first, might by reason of an enfeebled physical condition be attacked within a week by blood-poisoning which would wholly prevent him from transacting any kind of business. The court is not prepared to say that in the latter case no recovery of indemnity could be had under a policy like that held by Mr. Barnes.

While the word "immediately," in the connection used, is an adverb of time, yet the period within which nature acts to work a total disability from an injury must vary in different persons. In the supposed case of blood-poisoning, if counsel for plaintiff in error is right, no recovery could be had under the accident policy in question because nature was too slow in her operations—because the consequence did not follow the known cause with sufficient celerity. To follow literally the words of the contract, if there was any interim between the hurt and the total disability, be

it ten minutes, half an hour, or two hours, there could be no recovery of indemnity.

It has been adjudged that the word "immediately" in such contracts of indemnity cannot mean "within a reasonable time," for the latter phrase is referable only to an act done by human agency, in exercise of the will. (*Williams v. Accident Association,* 91 Ga. 698, 17 S. E. 982.) The use of the phrase "within a reasonable time" in the instruction under discussion is somewhat confusing as repeated in the closing paragraph, and its use at all in such cases widens the latitude of the jury's investigation and brings forward a doubt whether the terms of the policy will admit of the employment of the words without changing the contract of the parties.

In *Williams v. Accident Association,* 91 Ga. 698, the court concluded that accident-insurance companies put into their policies the condition that the injury must be immediate and total to guard against the hazard of uncertain litigation to determine whether a disability occurring after the hurt was attributable to it. Of course, the disability must not flow from any other cause than the original injury. If it does, there is no liability. If the conditions of the contract can be extended so that the word "immediately" does not mean "instantaneously," "at once," and "without delay" (as all courts agree), then a greater stretch of the conditions cannot be said to be unreasonable in allowing for the period that nature halts before inflicting penalties for her violated laws. In such cases the disability is immediate, within the meaning of the policy.

The judgment of the court below is reversed and a new trial granted.

All the Justices concurring.

## OPINION ON REHEARING.
### (82 Pac. 1099.)
##### SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Accident Insurance—Verdict and Evidence.* Some expressions in the former opinion in this case are modified, and the rule of construction of the terms "total disability" and "immediately" announced therein, being applied to the policy of insurance and the facts in evidence, *held,* that this court cannot say that the evidence did not satisfy the conditions of the policy, or that the finding by the jury that the insured was wholly and continuously disabled from attending to every kind of business pertaining to his occupation after July 23 was not sustained by the evidence.

2. PRACTICE, DISTRICT COURT—*Continuance.* Where depositions are suppressed upon the ground that when received by the clerk through the mails the envelope enclosing them was found torn open, it is error for the court to refuse an application for a continuance, made immediately thereafter, which complies with the provisions of section 317 of the code of civil procedure (Gen. Stat. 1901, § 4765), it appearing that the defective condition in which the depositions were received was not caused by any fault or neglect of the party taking the same.

3. —— *Accident Insurance — Proof of Loss — Instruction.* Proofs of loss in an action upon an accident-insurance policy are admissible to prove compliance with the conditions of the policy, but for no other purpose, and it is error to refuse an instruction limiting the scope and effect of such testimony.

The opinion of the court was delivered by

PORTER, J.: A petition for a rehearing was allowed in this case. Upon reargument and a further consideration of the record it has been thought proper to modify some of the expressions in the former opinion, and to consider some matters omitted therefrom, although the result will remain the same, as the judgment must be reversed and another trial granted.

All that was said in the former opinion in considering the terms "total disability" and "immediately," and the construction to be placed thereon, with the criticism upon the trial court's instruction in reference

to the term "immediately," must stand.   In support of
the construction given these terms see the following
additional authorities:  *Wall v. Casualty Co.,* 111 Mo.
App. 504, 86 S. W. 491; *United States Casualty Co. v.
Hanson,* 79 Pac. (Colo. App.) 176.

Our attention has been called upon reargument to
the failure in the former opinion to apply the rule of
construction announced therein to these terms in the
policy and the facts in evidence in this case; and, upon
further consideration, we are of the opinion that this
court is not warranted in saying that "the evidence
did not satisfy these conditions of the agreement."
Especially is this true if allowance is to be made for
the interval in which nature may be said to halt, in
some cases, before inflicting the penalty for her vio-
lated laws.   It is possible also that too much impor-
tance was attached to the fact that during the interval
between July 23 and August 4 Mr. Barnes, except for
a day or two when he was complaining of being "under
the weather," went to the office and to some extent at-
tended to his duties.   There is some ground for a rea-
sonable inference from the evidence that in the condi-
tion the business of the new company was during this
time there was not much done by any one, and the
duties performed by him were not such as demanded
the effort his usual occupation required.   Allowing to
plaintiff every reasonable inference that the jury may
have drawn from the facts proved with reference to
his physical condition during the period from July 23
to August 4, we cannot say, without weighing the evi-
dence, that the finding of the jury in answer to special
question No. 6 was not sustained by the evidence.

The case, however, must be reversed for other rea-
sons.   It appears that plaintiff introduced in evidence
the proofs of loss, including a preliminary statement
of his claim and a notice of injury, both signed by him,
which contained self-serving statements in reference to
the injuries claimed and his sickness.   The proofs of
loss were accompanied also by statements of a physi-

cian. These were admissible for the purpose of proving that the conditions of the policy with reference to notice and proofs of loss had been complied with, but were not admissible for any other purpose, and it was error to refuse an instruction asked by defendant limiting the scope and purpose of this testimony. No objection was made by defendant at the time the papers were offered. In fact, some of them were introduced by defendant in rebuttal, without any attempt to limit their purpose as evidence at the time the offer was made. But, however offered, the authorities substantially agree that it is error for the court to refuse an instruction limiting the effect and purpose of such testimony. (*Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 762, 12 S. E. 18; *Cook v. Insurance Co.,* 84 Mich. 12, 47 N. W. 568.) In *Crenshaw v. Life Ins. Co.,* 63 Mo. App. 678, 682, it is held to be the duty of defendant in such a case to ask an instruction limiting the effect of the evidence, and error for the court to refuse it. In *Forster v. Fidelity & Casualty Co. of New York,* 99 Wis. 447, 453, 75 N. W. 69, 40 L. R. A. 833, it was said:

"Both the letters and the affidavits contained many statements of facts and opinions bearing on the cause of death which were well calculated to be regarded by the jury as substantive proof upon the question, and it was error to receive it and allow it to be used for this purpose."

The preparation of the notice and proofs of loss rests with the assured. They are often accompanied by *ex parte* statements and affidavits of eye-witnesses, physicians, and others. To allow such evidence to be admitted without restriction would enable the assured to load the proofs of loss and notice with self-serving statements without limit, and, under the guise of their competency for one purpose, use them as evidence of his case generally. (See *Fidelity Mutual Life Association v. Ficklin et al.,* 74 Md. 172, 21 Atl. 680, 23 Atl. 197; *Commonwealth Insurance Co. v. Sennett et al.,*

Commercial Travelers v. Barnes.

41 Pa. St. 161; *Lycoming Insurance Co. v. Schreffler*, 42 Pa. St. 188, 82 Am. Dec. 501; *Peoples Accident Ass'n v. Smith*, 126 Pa. St. 317, 17 Atl. 605, 12 Am. St. Rep. 870; *Hiles and another v. Hanover Fire Ins. Co.*, 65 Wis. 585, 27 N. W. 348, 56 Am. Rep. 637; 1 Cyc. 296.)

The trial began April 12, 1904. Immediately before the jury were impaneled a motion to suppress certain depositions taken by defendant was allowed. The grounds of the motion were that the envelope enclosing the depositions, when received by the clerk from the mail-carrier, was found to be torn open, disclosing the contents. The depositions were received and filed April 2. On the same day the motion to suppress was filed, but, except such notice as the dockets of the court imparted, counsel for defendant had no actual knowledge of the filing of the motion or that there was any defect in the depositions until the case was called for trial. Error is urged in allowing this motion, as well as in refusing the application for a continuance, presented immediately after, and which substantially complied with section 317 of the civil code (Gen. Stat. 1901, § 4765). The grounds of the motion to suppress were somewhat technical, especially as it appears from the affidavit of J. M. Orr, an experienced stenographer who took the depositions, that he sealed, addressed and mailed them and that at the time of the hearing they were in exactly the same condition as when they left his hands. (*Bank v. Atkinson*, 62 Kan. 775, 781, 64 Pac. 617.) The record does not show that his affidavit was called to the attention of the court until after the motion to suppress had been granted, and we cannot say that there was error in suppressing the depositions. But defendant was, without question, entitled to a continuance. The evidence, or some of it, was very material to the defense, and no fault or neglect of defendant was responsible for the condition in which the depositions arrived at the clerk's office. Even actual notice of the motion from the time it was

filed would not have justified the retaking of the depositions in advance of the court's ruling thereon. In the furtherance of justice between the parties a continuance should have been granted. (*The State v. Brown,* 55 Kan. 766, 770, 42 Pac. 363.)

Some of the hypothetical questions asked of the expert physicians by the plaintiff were objectionable, for the reason that they assumed material facts which the evidence did not warrant, but it is unnecessary here to recite the questions at length.

Defendant asked the court to submit to the jury, among others, the following special questions:

"(1) Did plaintiff swallow a pin? (Submitted to the jury.)

"(2) If your answer to the last question be 'yes,' state on what date plaintiff swallowed the pin. (Refused, and excepted to.)"

It was material for plaintiff to show, either by positive testimony or by circumstances, when the injury occurred in order to ascertain whether loss of time followed immediately after the injury and was continuous therefrom, as well as to fix a time when, under the conditions of the policy, notice should have been given. If it be said that the court refused this question for the reason that there was no evidence from which the jury could have answered it intelligently, then there was a failure of evidence upon a very material matter. It might not have been possible for the jury to have given the exact date, but they could have been answered in accordance with the evidence. Another question asked the jury to state when plaintiff first learned that he had swallowed a pin. These should have been submitted. The others, calling for findings as to who was present when he swallowed it, and the circumstances, were not proper.

The former judgment of reversal will stand, and the cause is remanded for further proceedings.

All the Justices concurring.