THE CONTINENTAL CASUALTY COMPANY V.
MARY M. COLVIN.
No. 15,320.  (95 Pac. 565.)

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE — *Injury Causing Death — Liability. of Insurer.*  Where an accident-insurance policy contains a provision that the company will pay "indemnity as scheduled below, in the event that said insured . . . shall receive personal, bodily injury, which is effected directly and independently of all other causes through external, violent and purely accidental means, . . . and which causes at once total and continuous inability to engage in any labor or occupation," and is followed by another provision that "if, within ninety days from the date of the accident, any one of the following losses shall result necessarily and solely from such injury, the company will pay," etc., *held*, that the words "such injury" refer to the injury first mentioned in the former clause for the purpose of identification merely, and have no reference to the condition or degree of the injury immediately after it was received.

2. ———— *Proximate Cause of Death—Contributing Causes.*  In an action by the beneficiary named in such a policy to recover the stipulated indemnity for the death of the insured, who died from an accidental injury, the condition that such death must have resulted "necessarily and solely" from such injury will be satisfied by showing that the injury was the predominating and efficient cause of the insured's death; the fact that other conditions were set in motion by the injury which may have contributed to such result is immaterial.

3. ———— *Notice to Insurer.*  Where an accident-insurance policy provides for the payment of a weekly indemnity to the insured if disabled by an accidental injury to the extent described, and also provides for the payment to a beneficiary named in the policy of a stipulated indemnity in case of the insured's death from such an injury, and stipulates that "written notice of claim must be given by the insured, or by the beneficiary, to the company . . . fifteen days from the date of the accident causing the loss for which claim is made," the time within which notice must be given by the beneficiary does not begin to run until the death of the insured.

4. WORDS AND PHRASES—*"Infection."*  The word "infection," as

36—77 KAN.

used in the policy involved in this action, relates to external injuries, and does not include internal inflammations where pus is formed by the presence of pus germs.

5. ACCIDENT INSURANCE—*Evidence—Proofs of Loss—Immaterial Error.* In an action on an insurance policy it is error to permit the proofs of loss furnished by the plaintiff to the defendant to be introduced in evidence on the trial, when objection is made thereto by the defendant, except for the purpose of showing that the requirements of the policy in that respect have been complied with. When they have been so erroneously admitted, however, and it appears that all the witnesses whose statements were in the proofs of loss so admitted testified in person on the trial and were subject to cross-examination, the error will be deemed harmless.

Error from Harvey district court; PETER J. GALLE, judge. Opinion filed April 11, 1908. Affirmed.

*Cyrus S. Bowman,* and *Harry C. Bowman,* for plaintiff in error; *Manton Maverick,* of counsel.

*C. E. Branine,* and *Ezra Branine,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: On December 19, 1904, the Continental Casualty Company issued an accident-insurance policy to Ammazyah G. Colvin, of Newton. The beneficiary named in the policy was Mary M. Colvin, a sister of the insured. On January 9, 1905, the insured was accidentally injured, and died March 7, 1905. This action was commenced in the district court of Harvey county, December 21, 1906, by Mary M. Colvin, to recover the amount named in the policy. The petition was in the ordinary form, reciting the policy, the injury, its progress and results. The answer was practically a general denial. The principal controversy arises over the conditions of the policy, and a reference to them will more clearly indicate the contention of the parties. For that purpose the material parts are here given, as follow:

"In consideration of the warranties and agreements

contained in the application herefor and the payment of premium as therein provided, does, on this 19th day of December, A. D. 1904, hereby insure Mr. Ammazyah G. Colvin (hereinafter called the insured) in Class Spl. of the company, as a boiler-washer's helper, in the principal sum of one thousand dollars, with weekly indemnity of $7.50, and, subject to the conditions hereinafter specified, promises to pay to the insured or to his beneficiary, Mary M. Colvin, his sister, indemnity as scheduled below, in the event that said insured, while this policy is in force, shall receive personal, bodily injury, which is effected directly and independently of all other causes through external, violent and purely accidental means, . . . and which causes at once total and continuous inability to engage in any labor or occupation, and provided that neither such injury nor inability is in consequence of, nor contributed to by, any bodily or mental defect, disease or infirmity of the insured.

### "PART I. SPECIFIC INDEMNITY.

"If, within ninety days from the date of the accident, any one of the following losses shall result necessarily and solely from such injury, the company will pay, in lieu of any indemnity, and within ninety days from the furnishing of proof: (a) For loss of life, said principal sum. (b) For loss of both hands, or for loss of both feet, or . . . of the entire sight of both eyes, said principal sum. (c) For loss of either hand . . . or loss of either foot . . . one-half of said principal sum. (d) For the irrecoverable loss of the entire sight of one eye, one-quarter of said principal sum."

### "PART II. WEEKLY INDEMNITY.

"*For loss of time.*—If such injury shall not result in any of the losses scheduled in Part I, the company will pay for total loss of time necessarily resulting from injury, as before described, the weekly indemnity stated above for a period of not exceeding one hundred and four weeks.

### "PART III. SPECIAL INDEMNITIES.

"B. In any of the losses covered by this policy and specified in Parts I or II, . . . . (4) where the loss is occasioned or contributed to in any way by erysipelas, blood-poisoning or infection; then, and in all cases referred to in this paragraph B of Part III, the amount

payable shall be one-fourth of the amount which otherwise would be payable under this policy, anything· in this policy to the contrary notwithstanding, and subject otherwise to all the conditions in this policy contained."

## "PART V. INDEMNITY PAYMENTS.

"Indemnity for loss of life is payable to the beneficiary hereinbefore named, if surviving; otherwise to the estate of the insured. All other indemnities are payable to the insured. Not more than one indemnity specified in Part I will be paid under this policy, and all weekly indemnity shall terminate upon the death of the insured.

## "PART VI. NOTICE.

"Written notice of claim must be given by the insured, or by the beneficiary, to the company at its office from which this policy is issued, and be received there within fifteen days from the date of the accident causing the loss for which claim is made."

On the face-fold of the back of the policy there was printed, in bold type, the following:

## "IMPORTANT.

"In case of injury notify the company immediately. Read your policy. No claim will be entertained unless written notice of injury is given to the company within fifteen days from date of injury."

In the absence of any question upon the subject, we assume as facts established in the case that the policy was in force when the insured died; that the injury was sustained accidentally, as alleged, and death followed on the date named; and that proofs of loss were properly furnished by the beneficiary. The facts material to the controversy, briefly summarized, are: That the injury was received from a fall which precipitated the insured against the edge of timbers, whereby he was bruised on the left side of his chest, causing external soreness and discoloration of the skin. The insured did not regard the injury as serious when it was received, although quite painful. At the time of the accident he was employed as a boiler-washer's helper by the Atchison, Topeka & Santa Fe Railway Company,

and, except for the loss of six days, he continued to perform his duties as such employee, with the occasional assistance of his fellow servants, up to January 29. On January 31 he called a physician, Doctor Abbey, who pronounced the ailment to be pneumonia or pleurisy, and gave treatment therefor. On February 14, there being no improvement, another physician, Doctor Axtell, was called, who upon examination and consultation with Doctor Abbey decided that the former diagnosis was incorrect. The insured was removed to a hospital, where, on February 16, an operation was performed by which it was ascertained that the chest cavity contained a large accumulation of pus. This was liberated and the cavity drained. The patient was very much exhausted, however, and on March 7 he died.

The insurance company denies liability, on the ground that the injury is one not within the terms of the policy for the reasons: First, it did not cause "at once total and continuous inability to engage in any labor or occupation"; second, the death of the insured was not caused "necessarily and solely from such injury"; third, notice in writing was not given to the company within fifteen days after the date of the injury; fourth, death was caused in part by infection, and therefore the amount of recovery was excessive.

The case was tried to a jury, and a general verdict was returned in favor of the beneficiary for the full amount of the policy. Judgment was entered on the verdict, a motion for a new trial was denied, and the insurance company brings the case here for review.

On the trial the insurance company requested several instructions which were refused; it submitted several special questions to be answered by the jury which the court withheld; it objected to the instructions given by the court, and otherwise raised the questions now insisted upon. It will be unnecessary to repeat the demurrers, instructions and various objections in de-

tail, as they simply constitute different methods by which these questions were presented.

The verdict is of course conclusive here as to any questions of fact properly presented to the jury. But the fundamental and controlling error urged against the district court consists of its erroneous interpretation of the policy, and its consequent misconception of the rights of the insurance company and of the duties of the beneficiary. The district court tried the case upon the theory that the propositions contended for by the insurance company had no application to the case, and for that reason they were overruled. This difference between court and counsel arises from their inability to agree upon the proper interpretation of the insurance policy, and this question of interpretation is now presented here for consideration.

In the construction of a written instrument it is well to keep in mind the purpose to be accomplished thereby, and attribute such meaning to its language and provisions as will harmonize with, and best effectuate, such purpose. The most casual examination of the policy in question indicates that it was intended to accomplish at least two purposes: First, to indemnify the insured for loss which might result to him during his life from accidental injuries received; and, second, to indemnify the beneficiary if the insured should lose his life on account of such an injury. The conditions and requirements of the policy were intended to apply to and carry out these two purposes, and a part of them were designed for one of such purposes only. The particular clauses (numbered for subsequent reference) of the policy involved in the construction insisted upon read:

(1) "In the event that said insured, while this policy is in force, shall receive personal, bodily injury, which is effected directly and independently of all other causes through external, violent and purely accidental means (suicide, sane or insane, not included), and which causes at once total and continuous inability to engage in any labor or occupation."

Casualty Co. v. Colvin.

(2) "If, within ninety days from the date of the accident, any one of the following losses shall result necessarily and solely from such injury."

(3) "Where the loss is occasioned or contributed to in any way by erysipelas, blood-poisoning or infection; then, and in all cases referred to in this paragraph B of Part III, the amount payable shall be one-fourth of the amount which otherwise would be payable under this policy."

(4) "Written notice of claim must be given by the insured, or by the beneficiary, to the company at its office from which this policy is issued, and be received there within fifteen days from the date of the accident causing the loss for which claim is made."

Where the insured is injured, and, claiming to be unable to follow his business, demands the stipulated weekly indemnity, it may be important for the insurer to be able to determine definitely the extent and duration of the disability, and for this purpose the degree of disability which creates liability upon the company might well be clearly and specifically defined in the contract; but in the case of death, caused solely by the injury, it is immaterial whether total disability occurred "at once" after the injury or not. It is insisted in argument that the words "such injury" at the close of clause 2 just quoted refer back to and include the whole of clause 1, and therefore the insurer cannot be liable to the beneficiary unless the death of the insured was preceded by an injury which "at once caused total and continuous inability to engage in any labor or occupation." We do not agree with this interpretation. It seems more in harmony with the objects of the policy and the liberal rules of construction which apply to instruments of this kind to say that the words "such injury" refer back to the injury mentioned in clause 1 for the mere purpose of identification, and do not have the effect of uniting both sentences into one so as to make the provision, when considered as a whole, mean that before a beneficiary can recover for the death of the insured there must have been an accidental injury

which resulted both in immediate total inability and loss of life. Such does not seem to have been the intent of the parties. But even if the language is susceptible of such a construction, it does not follow that it ought to be adopted. The rule is practically universal that when the language of an accident policy is susceptible of different constructions that one must be adopted which is most beneficial to the insured. (1 Cyc. 243; *Travelers' Ins. Co. v. Murray,* 16 Colo. 296, 26 Pac. 774, 25 Am. St. Rep. 267; *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758.)

In the case of *Driskell v. Ins. Co.,* 117 Mo. App. 362, the court considered the effect of language practically the same as that in this policy, and it was said in the head-note to the case in 93 S. W. 880:

"Where an accident policy provided for the payment of a monthly sum if the insured were disabled, to the extent described, solely by external, violent, and accidental means, and also provided for a payment 'if death should result solely from such injuries,' the words 'such injuries' have no regard to the extent of disablement that immediately followed the injury."

The case of *Rorick v. Railway Officials' & Employees' Acc. Ass'n,* 119 Fed. 63, 55 C. C. A. 369, is of like import. In that case the court said:

"An accident policy provided that the insurance thereunder should 'extend only to physical bodily injury resulting in disability or death, . . . effected . . . solely by reason of and through external, violent, and accidental means, . . . which shall, independently of all other causes, immediately, wholly, totally, and continuously from the date of the accident causing the injury disable the insured, and prevent him from doing and performing any work,' etc. It further provided that there should be no liability for more than one of the losses specified, on payment for any one of which the policy should terminate, and the first loss specified was 'loss of life occurring within ninety days from the date of the accident causing the fatal injury.' *Held,* that such provisions could not be

construed to exempt the insurer from liability for death resulting from an accidental injury within ninety days, because such accident did not produce 'immediate, total, and continuous' disability." (Syllabus.)

The facts which make the insurance company liable to the beneficiary are: First, the accidental injury to the insured; second, his death; third, that the death was "necessarily and solely" the result of such injury; and, fourth, that the death occurred within ninety days after the accident causing the injury. The condition of the insured between the time of the injury and his death is unimportant.

The case of *Commercial Travelers v. Barnes*, 72 Kan. 293, 80 Pac. 1020, has been cited and commented upon, but that action was prosecuted by the insured to recover indemnity for loss of time, while this was commenced by the beneficiary. The cases are so unlike in all essential matters that we are unable to see how that case can be useful here.

We think that an accidental injury which causes the death of the insured within ninety days thereafter gives a right of action to the beneficiary under the policy involved in this case, whether total disability followed the injury "at once" or not. In opposition to this view we have been referred to the case of *Continental Casualty Co. v. Wade* (Tex. 1907), 105 S. W. 35. We have also read the dissenting opinion of Judge Gilbert in the case of *Rorick v. Railway Officials' & Employees' Acc. Ass'n*, 119 Fed. 63, 69, 55 C. C. A. 369. They both present that side of the question with clearness and force, but we are not inclined to follow them.

It is also contended that, if this right of action existed, it has been lost by failure to give notice as required by clause 4, above set out. No notice was given to the company until more than fifteen days after the insured was injured. If such notice was necessary, the failure to give it worked a forfeiture of all rights under the policy. It will be seen from clause 4 that

notice of the claim must be given by the insured or by the beneficiary. These parties cannot both have a claim at the same time. It would be a useless thing for the beneficiary to give notice of a claim which is not in existence and which may never arise. Such a proceeding cannot be fairly assumed to have been contemplated by the parties, and it does not seem to be clearly expressed by the language of the policy. Until the death of the insured the beneficiary had no interest in, or claim to, the policy, and no rights under its provisions. A claim in favor of the insured arose after he received the injury, and to preserve that claim it was incumbent upon him to give the required notice. But the beneficiary, during the life of the insured, had no claim against the company nor any right under the policy to be protected. The language of the clause evidently contemplates that this duty will in some cases rest upon the insured and in others upon the beneficiary, for they are both mentioned. In the case of the *Western Commercial Travelers' Ass'n v. Smith*, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653, it was said:

"When the provision 'in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given,' is read in the light of the events to which it refers, and of the relation of the parties to the contract to each other, its natural and obvious meaning is that in the event of any accident or injury which shall not result in death immediate notice of such accident or injury shall be given, or, in the case of death resulting from any such accident or injury, immediate notice of such death shall be given, because in the one case it is the injury, and in the other it is the death, which conditions the existence of the claim. The conclusion is that this certificate required no notice of the accident or injury to be given to the association by the beneficiary of the death loss before the death occurred, and the due notice which the court finds she gave immediately after the death was a sufficient compliance with this stipulation of the agreement." (Page 403.)

In the case of *Nax v. Travelers' Ins. Co.,* 130 Fed. 985, it was said:

"This leaves the question of notice. It will be noted the policy provides for two distinct claims thereunder —one by the insured for weekly indemnity, the other by a named beneficiary in. the case of death. As no right or interest in the death benefit vested in the beneficiary until the death of the insured, it would seem that no duty in the way of notice was imposed on her until the death of the insured vested a claim in her against the insurer. Whatever, therefore, may have been the duty of the insured as to notice in order to secure indemnity, it is clear to us the notice the death beneficiary was to give was not a notice of the accident but of death." (Page 986.)

In the case of *Odd Fellows Fraternal Accident Ass'n v. Earl,* 70 Fed. 16, 16 C. C. A. 596, the requirement of the policy as to notice was as follows:

"Written notice shall be given the said association at Westfield, Mass., within ten days of the date of the accident and injury for which claim of indemnity or benefit is made, with full particulars thereof, including a statement of the time, place and cause of the accident, the nature of the injury, and the full name and address of the insured and beneficiary, and unless such notice and statement is received as aforesaid all claim to indemnity or benefit under this certificate shall be forfeited to the association." (Page 19.)

The court said:

"The notice here called for is plainly to be given when a claim for indemnity by the certificate holder, or of benefit by the beneficiary, is extant. If the incapacity, contemporaneous in origin with the date of the accident, has resulted, or, if the mutilation or death has taken place, within the ten days, so that a claim for indemnity or benefit is outstanding, the ten days' notice seems to be required. But we see in this language no express call for such a notice if no 'claim of indemnity or benefit' be then made." (Page 19.)

In the case of *Rorick v. Railway Officials' & Em-*

*ployees' Acc. Ass'n,* 119 Fed. 63, 55 C. C. A. 369, it was said:

"An accident policy, insuring only against 'physical bodily injury resulting in disability or death,' contained a provision that 'notice of the accident causing the disability or death shall be given in writing . . . within fifteen days from the date of the accident causing the disability or death, . . . and failure to give such notice within said time shall render void all claims under this policy.' *Held*, that under such policy the time for giving notice did not commence to run until either disability or death resulted from an injury, until which time there was no 'accident causing disability or death' which brought the case within its terms, and that where an insured received a blow on the head which did not cause disability at the time, and was regarded as a trivial injury, but which resulted a few days later in both disability and death, a notice given four days after his death and within ten days after his disability was in time." (Syllabus.)

Notice was given by the beneficiary in this case within eight days after the death of the insured.

It is further contended that the death of the insured was not caused solely by the injury, but resulted in part by infection, by pneumonia, and other causes which under the terms of the policy would prevent any recovery, or at least would reduce the amount which the beneficiary was entitled to recover to one-fourth of the principal sum named in the policy. An injury may be said to be the sole producing cause of death when it stands out as the predominating factor in the production of the result. It need not be so violent and virulent as necessarily and inevitably to produce the result regardless of all other circumstances and conditions. The active efficient cause that sets in motion a train of events which bring about a result without the intervention of any force from a new and independent source may be regarded as the direct and proximate cause. If the immediate cause of death is a disease produced wholly by an injury, the death must be attributable to the injury and not to the disease.

In this case the insured was a strong young man, in vigorous health at the time he received the injury, and his condition thereafter was clearly traceable to the injury as the effective and producing cause thereof. It must, therefore, be held that the injury was the sole cause of his death. The verdict is conclusive upon this question, even if it would otherwise be doubtful. The foregoing is sustained by the following authorities: *Driskell v. Ins. Co.*, 117 Mo. App. 362, 93 S. W. 880; *Western Commercial Travelers' Ass'n v. Smith*, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; *Travelers' Ins. Co. v. Melick*, 65 Fed. 178, 12 C. C. A. 544, 27 L. R. A. 629; *National Masonic Acc. Ass'n v. Shryock*, 73 Fed. 774, 20 C. C. A. 3; *Milwaukee, etc. Railway Co. v. Kellogg*, 94 U. S. 469, 24 L. Ed. 256; *Travelers' Ins. Co. v. Murray*, 16 Colo. 296, 26 Pac. 774, 25 Am. St. Rep. 267.

As to the effect of infection upon the amount of recovery, there was evidence tending to show that it was a contributory cause of the death of the insured. The insurance company requested the district court to give an instruction to the jury upon this subject which reads:

"The jury are instructed that if from the preponderance of the evidence and under the instructions of this court they find the issues of this case for the plaintiff, and if they further believe from the preponderance of the evidence that the death of Ammazyah G. Colvin was occasioned or contributed to in any way by infection, then they should find their verdict for the plaintiff and assess the damages at $250, with interest thereon at the rate of six per cent. per annum from July 6, 1905."

This instruction was refused, and the only instruction given which might be said to refer to this subject was one which stated generally that before the plaintiff could recover it must be shown that the death of the insured resulted "necessarily and solely from such injury." This was error. We have concluded, how-

ever, that the error was not prejudicial. The only evidence upon the question of infection was the testimony of the physicians who attended the insured during his last sickness—Doctors Abbey and Axtell. They testified in substance that a large accumulation of pus was removed from the chest cavity of the insured; that such pus was caused from inflammation and the presence of pus-producing germs; that germs of this character abound throughout the system of every person—are inactive during good health, but when the internal tissues are weakened by an injury or otherwise, and become inflamed, then these germs attack the diseased parts and pus results. The process by which these germs come in contact with the inflamed tissue is, or may be, called infection. The inflammation and pus present in the chest cavity contributed to some extent to the death of the insured, and therefore these witnesses stated that infection contributed thereto. One of these witnesses stated, however, that the word "infection" was not ordinarily used to describe such a condition, and it was not a good word to use for internal injuries, as it refers to bacteria, and is used with reference to external injuries which become infected from the air. Among the special questions which the insurance company requested the court to submit to the jury, two were given which, with their answers, read:

"(13) Ques. Did the injury sustained by Ammazyah G. Colvin become infected? Ans. No.

"(14) Q. Was the death of Ammazyah G. Colvin occasioned or contributed to in any way by infection? A. No."

These answers were fully justified by the testimony. The jury evidently believed that the word "infection," as used in the policy, was not intended to apply to the condition of the insured. The evidence of Doctor Axtell fully sustains this conclusion. It must be assumed, therefore, that the word "infection," as used in this policy, applies to external, and not internal, injuries.

The refusal to give the instruction requested could not have been prejudicial, and is therefore unavailing as a ground of error.

On the trial the plaintiff offered in evidence the affidavits and other exhibits which constituted the proofs of loss made to the insurance company. They were admitted over the objections of the defendant. Request was then made to the court to limit by instruction the application of this evidence to the purpose for which it was offered (to show notice to the company, and that proper proofs were furnished in proper time), which request was denied. At the close of the testimony an instruction was requested which reads:

"The court instructs the jury that the written proof of loss which has been admitted in evidence in this case can be used by the plaintiff only for the purpose of tending to prove a compliance with the terms of the policy requiring proof of loss to be filed within a certain designated time, and that such proof of loss is not to be considered by the jury as evidence proving or tending to prove in behalf of the plaintiff any of the several matters and things at issue in this case, beyond the mere fact of such compliance."

This was refused and nothing was given on that subject. This was error. (*Commercial Travelers v. Barnes,* 72 Kan. 306, 80 Pac. 1020, 82 Pac. 1099.) An examination of the proofs of loss offered, however, shows that the same persons mentioned therein were witnesses on the trial of the case, and testified to the same facts and were subject to cross-examination by the defendant. The jury received nothing from these proofs of loss different from what was given to them in the usual and proper manner. We therefore conclude that the error could not have been prejudicial, and hence it does not furnish a sufficient ground for reversal.

We have now considered all the questions presented. They have been raised in numerous ways—by demurrers to the petition and the evidence, objection to the

introduction of any evidence under the petition, by requests for instructions to the jury, requests to submit special questions, and by a motion for a new trial; but in each instance the foregoing questions were relied upon.

Generally, it has been insisted that parties have the right to make such contracts as they desire, and, when made, each party should be held to a performance thereof. This is good law. It is also claimed that the policy in this case was prepared so that expert testimony could be dispensed with in actions brought to enforce its provisions. This object is commendable. But, on the other hand, insurance companies should prepare their policies with such clearness that their requirements and conditions will be readily understood by the ordinary reader who is expected to pay for and rely upon them for indemnity. The services of expert lawyers to impute to the language used a meaning not apparent to the common understanding would then be unnecessary also. Courts will not hasten to a construction which has the effect to forfeit the rights of the insured, or his beneficiary, under a policy which has been promptly paid for out of his meager wages and relied upon as an indemnity to himself against injury and a protection to his beneficiary in case of death, but they will readily adopt a just and reasonable construction which will prevent such a result.

The judgment of the district court is affirmed.