IDA A. COOK V. THE STANDARD LIFE & ACCIDENT
INSURANCE COMPANY.

*Accident insurance—Conditions—Waiver—Limitation of authority
of agent—Evidence—Intoxication—Proofs of loss.*

1. The acceptance of a policy of insurance which expressly neg-
atives the right of the agent to waive or alter any of its con-
ditions estops the assured from setting up or relying upon any
action on the part of the agent in opposition to such prohibi-
tion.

So *held*, where an agent issued an accident insurance policy
upon the written application of the assured, in which he repre-
sented that his habits of life were correct and temperate, and
which stated that it was understood and agreed that the policy
to be issued would not cover any accidental injury which
might happen while the assured was under the influence of
intoxicating drinks, or in consequence of his having been under
such influence. It was provided in the policy that none of its
conditions could be waived by any of the agents of the com-
pany, among which conditions was the non-liability provision
above stated. The assured was in the habit of getting intoxi-
cated when he made his application, which fact was known to
the agent. The assured was killed by falling upon a slippery
sidewalk, and in a suit brought to recover the insurance the
company defended on the ground of the false representations in
the application, and because, as it claimed, the accident hap-
pened while the assured was under the influence of intoxicating
drinks, which defense was met by the claim that, the agent
having, with knowledge of the habits of the assured, issued
the policy, thereby causing him to rely upon it as valid, the
company was estopped from setting up that fact to defeat a
recovery, it being chargeable with the knowledge of its agent,
which operated as a waiver of the conditions referred to, and
prevented it from making said defense; which contention is
held untenable under the doctrine laid down in *Cleaver v.
Insurance Co.*, 65 Mich. 527, which is affirmed.

2. A witness may state whether or not a person had the appear-
ance of being intoxicated, such statement not being mere
opinion, but the statement of a fact.

So *held*, in a suit upon an accident insurance policy which
did not cover injuries received while the assured was under

the influence of liquor, and on the trial the defendant sought to bring the case within such exception, and to that end asked one of plaintiff's witnesses, who had testified to driving the assured home on the night of the accident, if he was impressed with the idea that it was necessary for some one to do so on account of his condition; and asked one of defendant's witnesses, who had testified to being in the company of the assured during the day on which the accident occurred, and to seeing him drink, etc., if in his judgment the assured was in as good condition to take care of himself in walking and in avoiding danger from falls on a sidewalk, partly covered with ice and snow, as though he were sober; and asked another witness whether the assured was drunk or sober at the time of the accident, he having testified to seeing him at about that time; all of which questions are held to have been proper under the rule stated.

3. Whether proofs of death comply with the requirements of an insurance policy is a question for the court, and if that issue is tendered by the defendant the proofs furnished may be put in evidence and read to the court, but they are matters in which the jury are in no way concerned.

4. In such a case, where there is no contention on the part of the company but that preliminary proofs were furnished in full compliance with the terms of the policy, it is error to permit the plaintiff to read such proofs in full to the jury, including an affidavit of an eye-witness of the accident causing death, the physician's statement, and the certificate of the coroner, which may have had their influence upon the jury, and have been taken by them as proof of the facts therein contained.

Error to Muskegon.   (Dickerman, J.)   Argued October 14, 1890.   Decided December 24, 1890.

*Assumpsit.*   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*F. W. Cook* (*James T. Keena,* of counsel), for appellant.

*DeLong & O'Hara,* for plaintiff.

LONG, J. On May 7, 1888, the defendant, a Michigan corporation, issued to the husband of plaintiff a policy

of insurance for $5,000 upon a premium being paid of
$25. A written application was filled out by the defend-
ant's agent at Muskegon, and was signed by Bigelow T.
Cook, the husband of plaintiff, the plaintiff being named
as the beneficiary in the policy. The application con-
tained the following clause:

"16. My habits of life are correct and temperate, and
I understand and agree that the policy to be issued on
this application will not cover any accidental injury
which may happen to me either while under the influence
of narcotics or intoxicating drinks, or in consequence of
having been under the influence of either."

The policy contains clauses making the amount due
and payable to the plaintiff on account of death of her
husband resulting from "injuries to the body caused by
external, violent, and accidental means, within the mean-
ing of the policy," and purports to be issued in considera-
tion of the statement of facts warranted to be true in
the application, and upon conditions printed upon the
back of the policy, which the policy provides cannot be
waived or altered by any agent. Among such conditions
it is provided that the insurance does not cover a death
resulting wholly or partly directly from intoxication, etc.,
or when affected by any such act, cause, or condition, or
under its influence.

On the evening of February 28, 1889, Bigelow T. Cook
was killed by falling upon a slippery sidewalk in front of
his own house. The present action was brought to recover
on the policy, and on the trial before a jury in the
Muskegon circuit court the plaintiff had verdict and judg-
ment for the amount claimed under the policy. Defend-
ant brings error

In the notice attached to the plea of the general issue,
it was claimed that Cook, when he made the application,
was in the habit of using intoxicating drinks to excess,

and concealed such fact from the defendant when applying for the policy, and that his death was not occasioned by bodily injuries effected through accidental means, within the meaning of the policy, but that the same happened while he was under the influence of intoxicating drinks.

It appears that Mr. E. W. Eadus was the local agent of the defendant company at Muskegon, and took the application and issued the policy in question. He was acting under the State agent, Mr. J. T. Patton, who furnished him with blank applications and a book of blank policies, which Eadus filled out and delivered to parties when receiving the applications. It appears that before that time, and on May 9, 1887, Eadus had taken an application from Cook of like tenor, and issued to him a policy of like terms and conditions, for the same amount, which was to continue in force one year from that date. During the life of that policy, Mr. Cook met with an injury which resulted in his being laid up for some time, having a claim against the company, for several weeks' indemnity. While Mr. Cook was suffering from this injury, Mr. Patton, the State agent of the company, visited Muskegon. Mr. Eadus, on the trial of this case, when called as a witness for the plaintiff, testified that at the time Patton was at Muskegon, which was before the present application was taken or the policy issued, he told Patton that in his opinion Cook was under the influence of liquor when he met with the accident; that he tried to have Cook admit that he was, and that Cook had told witness that he wanted an accident policy to cover him that would protect him in any place he might go, and any condition he might be in. He also told Patton on that occasion that Cook had told him he did not want a policy unless it would protect him in any condition he might be in. He also told Pat-

ton at that time that Cook was a drinking man, drank every day, but seldom became intoxicated; and Patton asked if Cook was a man that was liable to get into trouble over his intoxication, and witness told him, "No." Eadus also told Patton that Cook would be satisfied with eight weeks' indemnity, or $200, and asked him:

"While you are here this time, what shall I do about renewing the policy again?" When Patton said, "Yes, renew the policy. He is $175 ahead, or will be when we pay this claim, and the only way to get even is to keep on insuring him, and then we can consider about stopping when we get even."

This statement of Eadus is denied by Mr. Patton. He claims that he had no knowledge of the condition of Mr. Cook, or of his habits of drinking, and was not advised by Mr. Eadus; that he had no authority from the company to waive any of the conditions in the printed application, or of the policy, and that Eadus had no such authority; that the company had nothing to do with Mr. Eadus; that Eadus was under his authority and supervision.

Two questions were submitted on this subject to the jury by the plaintiff for special findings, and they found as follows:

"Q. Did the local agent, E. W. Eadus, at the time the policy in suit was issued, have knowledge that the habits of Bigelow T. Cook were not correct and temperate?

"A. Yes.

"Q. Did the State agent of defendant, J. T. Patton, direct and advise the local agent, Eadus, to reinsure Mr. Cook after Eadus had told him he thought Cook was intoxicated at the time he was injured in February, 1888?

"A. Yes."

It is not strenuously contended but that Mr. Cook was a person in the habit of getting intoxicated at the time

the application was made, but it is insisted that, although he stated in his application for the policy that his habits of life were correct and temperate, the agent having knowledge of his habits in that regard, and after such knowledge having issued the policy and received the premium, thereby causing Cook to rely upon the policy as valid, the company is now estopped from setting that fact up to defeat a recovery on the policy; that this knowledge of the agent of the company in relation to the habits of Mr. Cook in indulging in intoxicating liquors is the knowledge of the company, and operated as a waiver of the conditions of the policy relating to intoxication, and estopped the defendant from asserting, as a defense to the suit, that Cook was intoxicated at the time he met with the injury. In support of this contention, counsel cite *Peoria, etc., Ins. Co. v. Hall,* 12 Mich. 202; *Aetna, etc., Ins. Co. v. Olmstead,* 21 Id. 246. But it will be found on an examination of those cases that the power of the agents was in no manner limited by the terms of the policies themselves.

In the present case, the policy provides that the agent of the company cannot waive or alter any of the agreements and conditions printed on the back of the policy. This question was fully discussed by Mr. Justice MORSE in *Cleaver v. Insurance Co.,* 65 Mich. 527, 532, and it was there said:

"It cannot be successfully maintained but that the company has the right and the power to restrict, as it may choose, the powers and duties of its agents, and, when the authority is expressly limited and restricted by the policy which the insured receives, there can be no good reason, either in law or equity, why such limitations and restrictions shall not be considered as known to the insured, and binding upon him. * * * When the policy of insurance, as in this case, contains an express limitation upon the power of the agent, such agent

84 MICH—2.

has no legal right to contract as agent of the company with the insured, so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein, either by parol or writing; and the holder of the policy is estopped, by accepting the policy, from setting up or relying upon the powers in the agent in opposition to the limitations and restrictions in the policy."

This doctrine was laid down and adopted by this Court after a careful consideration of that case, and I see no good reason for departing from it. The general doctrine is well expressed in *Insurance Co. v. Wilkinson*, 13 Wall. 222, and *Miller v. Insurance Co.*, 27 Iowa, 203:

"Insurance companies who do business by agencies at a distance from their principal place of business are responsible for the acts of the agent within the general scope of the business intrusted to his care, and no limitations of his authority will be binding on parties with whom he deals which are not brought to their knowledge."

The court below on the trial proceeded upon the theory that notice to Mr. Eadus or to Mr. Patton was notice to the company, and charged the jury that the defendant had a right to waive the conditions of the policy, and that, by issuing the policy to Mr. Cook with this knowledge on the part of its agents, and receiving the premiums, it waived the conditions relating to intoxication. This was not a statement of the law applicable to this case as laid down in *Cleaver v. Insurance Co.*, *supra*, and to which we must adhere.

It may be contended, however, that this statement from the court did not prejudice the rights of the defendant, as the jury found specially upon questions presented by the defendant as follows:

"*Q.* Was Bigelow T. Cook, the insured, under the influence of intoxication at the time he received the injury mentioned in plaintiff's declaration?

"*A.* No.

"*Q.* Was Bigelow T. Cook, the insured, under the influence of intoxicating drinks at the time he received the injury mentioned in plaintiff's declaration?

• "*A.* No.

"*Q.* Did intoxicating liquors drank by Bigelow T. Cook during the day of his death in any manner cause him to be more liable to the accidental injury in question by falling than he would have been had he not drank such liquor?

"*A.* No."

In view of the written request to charge framed by plaintiff's counsel, and given by the court, it is manifest that the charge as given by the court upon the question of waiver by the company of the conditions as to intoxication may have had its influence upon the jury. The court was asked by the plaintiff's counsel to instruct, and did so instruct, them that if they found from the evidence that the death of Mr. Cook was effected through violent, external, and accidental means, and if they believed the testimony of Mr. Eadus, they should render a verdict in favor of plaintiff for the amount of the policy, and interest at 6 per cent. from July 24, 1889, to date; that is, the jury were told, in substance, that if they found that Eadus knew that Cook was in the habit of getting intoxicated, and communicated that fact to Patton, this was notice to and knowledge of the company, and if his death was effected by violent, external, and accidental means the plaintiff could recover. This left out one important element which it was necessary for the plaintiff to show in order to recover, for by the terms of the policy it is expressly stipulated that the insurance does not cover death nor injury resulting wholly or partly directly from intoxication. There was some evidence in the case that Mr. Cook had been in the habit of drinking, and, if the testimony of Eadus is true, to excess, for some time prior to his death. It was also shown that on the day of his

death he had drank to some extent while at Grand Rapids, even as late as half past 2 in the afternoon. The court was in error in this part of the charge, and we think it may have had its influence upon the jury.

There are several other errors assigned, some of which we shall discuss, as the case must go back for retrial. The defendant sought to show that Cook was under the influence of liquor at the time of his injury, and, among other questions of similar import, asked the witness Jones, who drove him home on that night,—

"Were you impressed with the idea at that time that it was necessary for some one to go and drive him over on account of his condition?"

This was objected to as incompetent, and ruled out. This was error. The question was a proper one in view of the issue being tried, and as a part of the cross-examination. This was the proof of a fact, and something more than mere opinion. A witness may state whether or not a person had the appearance of being intoxicated, and such statement of appearance would be the statement of a fact. Sanity, intoxication, and state of health, or of the affections, are facts of this character. *People v. Eastwood*, 14 N. Y. 562; *State v. Pike*, 49 N. H. 407.

For the purpose of showing the condition of the deceased during the day and evening, defendant called as a witness Mr. Gunn, and asked him the following question:

"In your judgment was he in as good condition to take care of himself in walking and in avoiding danger from falls on a sidewalk, partly covered with ice and snow, as though he were sober?"

The following question was also asked of defendant's witness Peterson:

"Was he drunk or sober that night at that time?"

This was ruled out. These questions were admissible

under the rule above laid down. In fact, this was one of the vital questions in the case. If his death was caused or affected by his intoxication, then, under the terms of the policy, no recovery could be had. That was one of the very things the company was guarding against by the insertion of these conditions in the policy. It was an error to exclude these inquiries.

Plaintiff was permitted, under objection, to read in full to the jury the proofs of death which the policy required the plaintiff to furnish. It was claimed by counsel that the only purpose in reading them was to show that they were received by the company, and when received, and also for the purpose of showing that the claim was received and declined on the same day. As a part of the proofs of death, there was an affidavit of an eye-witness, the physician's statement, and certificate of the coroner. There was no contention on the part of the defendant but that the preliminary proofs had been furnished in full compliance with the terms of the policy, and it was error to allow them to be read in full in the presence of the jury. These were *ex parte* affidavits and statements, and they may have had their influence upon the jury, and have been taken by them as proof of the facts therein contained. There can be no doubt that had the proofs offered been contested by the defendant on the ground that they were not in full compliance with the requirements of the policy, as preliminary proofs of death, counsel would have had the right not only to put them in evidence, but to have read them to the court, but they were matters in which the jury were in no way concerned. Whether they complied with the requirements of the policy was for the court, and not for the jury.

The judgment must be reversed, with costs, and new trial ordered.

The other Justices concurred.