CARL L. LITTLE, as Guardian of Garnet Ellett, Appellant, v. THE IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellees.

**Life insurance:** INTOXICATION : EVIDENCE. In this action on a policy of life insurance providing against liability in case of injury while intoxicated, the evidence is held to justify a finding of intoxication when deceased was killed by a passing train.

**Same:** INSTRUCTION. An instruction in the language of the policy of insurance, that if deceased was "in any degree under the influence of intoxicating liquors" at the time he was killed he could not recover, was not so ambiguous as to render a failure to further limit or define the meaning of the provision erroneous, in the absence of a request, whatever might be the strict legal effect of the condition of the contract.

**Burden of proof:** INSTRUCTION. Where no request is made entire failure to instruct the jury with reference to the burden of proof is not necessarily erroneous; but where the court told the jury that to defeat plaintiff's action each defense must be sustained by a preponderance of the evidence there was a sufficient instruction on the subject.

**Cross-examination of witnesses:** SCOPE OF INQUIRY. The purpose of cross-eamination is to develop facts directly and naturally connected with the subject of the direct testimony, which will either

demonstrate its untruth, or tend to avoid or diminish its force: Thus where a witness had detailed the movements of himself and companion who was killed while asleep on a railway track, and the circumstances indicated the possibility of deceased's intoxication at the time, cross-examination of the witness as to whether he and deceased had been drinking during that day was proper.

Evidence: OPINION OF WITNESS. A witness may testify directly that a party appeared to be under the influence of liquor.

Instructions: STATEMENT OF ISSUES. Where it was apparent as in this case that the decisive issue in the determination of defendant's liability was the question of deceased's intoxication at the time he was killed, the fact that the instructions embraced a statement of all matters pleaded by both parties including matters on which there was no controversy, was not confusing or misleading as to the ultimate and controlling facts to be determined by the jury.

Insurance: INTOXICATION: NONLIABILITY: EVIDENCE. The evidence in this case is held to show that deceased voluntarily exposed himself to the obvious danger of which he complains, with no reasonable explanation of his conduct, thus relieving the defendant insurance company from liability under a condition of its policy, providing nonliability to insured when injured while in a state of intoxication.

*Appeal from Story District Court.*—HON. C. G. LEE, Judge.

THURSDAY, MARCH 14, 1912.

ACTION at law upon a policy of life insurance. There was a verdict and judgment for the defendant, and plaintiff appeals.—*Affirmed.*

*McCarthy & Luke,* for appellant.

*Sullivan & Sullivan* and *Edward M. McCall,* for appellee.

WEAVER, J.—On June 16, 1910, at Davenport, Iowa, one Myron E. Ellett was struck and killed by a moving

railway train. At the time of his said decease he held a certificate or policy of insurance in the defendant association, by the terms of which if said insured while in good standing as a member of said association should through external, violent and accidental means receive bodily injuries which, independently of all other causes, should result in death within ninety days from said accident, then his beneficiary, Garnet Ellett, should be paid a certain benefit or indemnity to be derived in the method and manner therein stipulated. Provisions were also made therein concerning notice of accident and proofs of death, which matters are not of material moment in the determination of this appeal. Notice of said Ellett's death was duly given to the association, which, after investigation, determined that the accident took place under circumstances relieving it from all liability on the policy, and, refusing payment, this action was begun to enforce collection of the claim.

The defense is to the effect that by the terms of the contract of insurance it was agreed the association should be under no liability for any benefit or indemnity on account of any accident occurring to said insured while in any degree under the influence of intoxicating liquors or narcotics, or which might happen on account or by reason or in consequence of the use thereof; nor should there be any liability for accident or injury to the insured brought about or occasioned by his voluntary exposure to obvious danger, and it is alleged by the defendant that the death of the insured resulted from and was caused by the fact that he was then under the influence of intoxicating liquors and by his voluntary exposure to open and obvious danger. These issues having been submitted to the jury, and a verdict returned thereon for the defendant, the judgment so rendered can not be disturbed on appeal except for insufficiency of evidence to sustain it, or for prejudicial error in the rulings of the trial court. It is the position

of the appellant that a reversal is required upon both grounds.

I. We give first attention to the sufficiency of the evidence. The record tends to show that on June 15, 1910, Ellett, the deceased, with one Hull left Des Moines, and went to the city of Davenport. Just how that trip was made is not entirely clear, but it is inferable that they stole the ride there upon a freight train, arriving in Davenport about eight o'clock on the morning of June 16th. If they had any business errand in that city, it is not disclosed. During the forenoon they went across the river to Rock Island, and later returned to Davenport. Hull testifies that while in Rock Island they drank three glasses of beer each, and in Davenport three more; the last having been taken between one and two o'clock in the afternoon. In the course of their rounds Ellett bought a bottle of whisky, though Hull asserts that no part of it had been consumed by either of them at the time of the accident. After drinking the beer last mentioned, they bathed in the river, and then returned to the track of the Chicago, Rock Island & Pacific Railway for the purpose of catching a train back to Des Moines. This they proposed to accomplish by taking their station at a point where, on account of a steep grade, westbound freight trains usually ran sufficiently slow to enable them to board the cars while in motion. This, Hull says, was about three o'clock in the afternoon. Having reached what they believed to be a favorable place for their purpose, they sat down or lay down on the ends of the ties on the south side of the track to wait the coming of a train. Remaining there for a time keeping a lookout for trains, they fell asleep. About five o'clock a train moving eastward down the grade struck them both, killing Ellett and injuring Hull. The engineer and firemen of the train which struck them say that when they discovered these persons immediately before the collision

<div style="margin-left:0"><em>1. LIFE INSURANCE: intoxication: evidence.</em></div>

they were lying with their heads on the south rail and motionless. An empty bottle was found near at hand by persons visiting the scene of the accident.

The station agent nearest the place testifies that he saw the men a little after three o'clock, and that they showed signs of intoxication. If we understand counsel correctly, they argue that the evidence that deceased drank six glasses of beer between eight o'clock in the morning and half past one in the afternoon, or that he was seen at three o'clock under the apparent influence of intoxicants, is insufficient to justify a finding that deceased was in such condition at the time of the accident. Even if this were all which the record discloses, we should hardly be justified in holding as a matter of law that the deceased was not or could not have been intoxicated when killed, and much less could we say that such finding by the jury has nothing in the record to support it. Although Hull swears that six glasses of beer each was the limit of their libations on that unfortunate day, the jury were not bound to believe the literal truth of that statement. A party of men who begin the morning with visits to the saloons, and keep it up at intervals until afternoon, are not apt to carry in mind a very accurately itemized account of their drinks, and, if within one, two, or three hours after a circuit of that kind they go out and sit down or lie down or fall asleep on a railway track where trains are liable to be passing at any moment, the conclusion that they are intoxicated is so nearly irresistible that a finding to the contrary would border on the ludicrous.

It may be true, as counsel suggest, that these men, having been without rest for a considerable period, were exhausted, and therefore the more readily gave way to the inclination to sleep, but that aspect of the case was doubtless argued to the jury, and found by them insufficient to reconcile the act of the deceased with a condition of sobriety or make that act any the less a reckless and volun-

tary exposure to a danger so imminent and obvious that a person whose faculties were not obfuscated by something more potent than mere weariness would have recognized and avoided it. All this seems so evident that the sufficiency of the circumstances to support the verdict appears too manifest to justify further discussion. There was no error in refusing to direct a verdict for plaintiff or in denying the motion for new trial on this ground.

II. Exception is taken to that part of the court's charge to the jury which says in substance that, if the deceased was under the influence of intoxicants to any degree at the time of his death, plaintiff is not entitled to recover. This, though given in the language of the policy, is said to state the rule too strongly, and that to be available as a defense it should be made to appear that the "influence" there mentioned must in some way have caused or tended to cause the accident. Whatever may be the strict legal effect of this condition of the contract, we think the record does not present a case calling for a discussion of its limitations. The court, as we have said, instructed the jury on this point in the language of the contract, and it is not so ambiguous that failure to further define or limit it where no request therefor is made will be held error. This holding in no manner ignores or modifies or restricts the rules of law announced and applied in the cases cited and relied upon by counsel. *Jones v. Association,* 92 Iowa, 652; *Kirkpatrick v. Insurance Co.,* 141 Iowa, 74; *Payne v. Association,* 119 Iowa, 342.

2. SAME: instruction.

III. It is further objected that the court failed to instruct the jury that the burden was upon the defendant to establish its affirmative defenses by a preponderance of the evidence. In this respect appellant misapprehends the court's charge. It is true that the charge does not say in so many words that the "burden is on defendant" to establish its

3. BURDEN OF PROOF: instruction.

special pleas, but it does tell the jury (which is the same thing) with reference to each of these defenses that to be available to defeat plaintiff's action it must be sustained "by a preponderance of the evidence." Assuming, as we must, that the jurors were men of ordinary intelligence, capable of reading and understanding the English language, this must be held a full and fair statement of the very rule for which appellant contends. No other instruction on this point was asked, and it has frequently been held that even an entire omission to charge the jury upon the burden of evidence is not reversible error in the absence of request therefor. *Duncombe v. Powers,* 75 Iowa, 185; *Martin v. Davis,* 76 Iowa, 762; *Harvey v. Clarinda,* 111 Iowa, 528.

IV.    Error is assigned upon the ruling of the trial court allowing the defendant upon cross-examination of the witness Hull to interrogate him concerning the fact whether he and the deceased had been drinking during the day of the accident. Even though the witness had not on his direct examination made any reference to this particular phase of their experiences on that day, it was obviously a proper thing for the defendant to go into the matter of their condition at the time and, as bearing upon their condition, the fact whether or not they had been indulging in drink.    Plaintiff had on direct examination inquired of the witness with more or less particularity concerning the movements of himself and the deceased from the time of their leaving Des Moines and during the following day up to the occurrence of the accident (omitting, however, any reference to their visits to the saloons or their indulgence in drink), and it would be very unreasonable to say this did not open the door to inquiry by the defendant whether the statement made on direct examination was a full and complete disclosure of the day's history. He had told his story of their going up the track,

4. CROSS-EXAMI-
NATION OF
WITNESSES:
scope of
inquiry.

sitting down upon the ties, and there falling asleep. The very nature of these statements was such as to suggest the possibility, if not the probability, that they were either intoxicated, or at least that full and minute inquiry into the facts would disclose conditions which the witness had not fully revealed. The primary purpose of all cross-examination is to develop facts naturally and directly connected with the subject of the direct testimony which shall either demonstrate its untruth, or, if true, shall tend to avoid or diminish its force and effect. The cross-examination here complained of comes well within the rule, and there was no error in admitting it.

Other complaint is made of the admission of testimony on part of defendant to the effect that these two men when at the station appeared to be under the influence of liquor, or that they looked as if they were just getting over a drunk or words to that effect. The objection is not well taken. The admissibility of evidence of this kind is well settled. That a witness may testify that a person appeared to be intoxicated or words to that effect has often been held. *Trott v. R. R. Co.,* 115 Iowa, 80; *State v. Crafton,* 89 Iowa, 109; *Bailey v. Centerville,* 108 Iowa, 20; *Reininghaus v. Association,* 116 Iowa, 364; *Cook v. Insurance Co.,* 84 Mich. 12 (47 N. W. 568); *Castner v. Sliker,* 33 N. J. Law, 95; *Eastwood v. People,* 3 Parker, Cr. R. (N. Y.) 25; 7 Ency. of Evidence, 777.

*5. EVIDENCE: opinion of witness.*

V. Error is further assigned upon the court's statement of the issues to the jury. The objection is principally to the effect that the court made a more minute and extended statement of the matters contained in the pleadings than was necessary, including those matters upon which there was no controversy, and that, because of this method of statement, the jury might easily have been confused or misled as to the ultimate facts to be found by them. It

*6. INSTRUCTIONS: statement of issues.*

is quite possible that the statement could have been abbreviated and still have been sufficient for all the purposes of the trial, but it is neither so extended nor so involved as to obscure the real issues. When the case was ready for submission, it must have been just as clear to the jury as to the court and counsel that the real controversy after formal proof of the death of the insured by a railway train was upon the issues raised by the plea that deceased was intoxicated at the time of his death, and that his death was the result of his voluntary exposure to obvious danger. The instructions given while embracing a statement of all the matters pleaded by both parties contained nothing to obscure the pivotal issues or otherwise prejudice the plaintiff's case. Taking the charge as a whole, we are satisfied that the mutual contentions of the parties were fairly stated.

VI.  The court charged the jury in general terms upon the admissibility and use of circumstantial evidence, and of this appellant also complains. We do not understand counsel to contend that circumstantial evidence may not be introduced and considered, but rather that in the form given the rule stated is too much of a license to the jury to enter the field of speculation and conjecture. We can not further extend the opinion to set out the instructions as given upon this feature of the case, but will say they are in apparent accord with our precedents, and their application to the case can not well be doubted.

Other instructions also are challenged, but the points so raised where not governed by the conclusions we have already announced are not sustained by the record. On the whole record we see no reason to doubt that the case was fairly tried without prejudicial error. It is too clear for sucessful question that there is ample support shown for a finding that the deceased came to his death as a result in part at least of his overindulgence in drink.

On the other branch of the defense, the act of the

deceased in voluntarily exposing himself without reason-

7. INSURANCE: able explanation or excuse to the obvious
intoxication: danger of the very calamity which befell
nonliability:
evidence. him is so clear even under the case as made
by the plaintiff himself that no other verdict could rea-
sonably be expected.

It would be . no kindness to . the orphaned child in
whose behalf the suit is prosecuted to reverse the judg-
ment below, and order a new trial, the result of which
must in all human probability remain the same, nor does
the appeal present any good ground upon which to justify
such an order.

The judgment of the district court is *affirmed*.