RANDALL *v.* TRAVELERS INSURANCE CO.

1. INSURANCE—LIFE INSURANCE—PAYMENT OF PREMIUM TO SOLICITOR—SCOPE OF AGENCY.

Where assured gave insurer an order on the paymaster of the railroad company by which he was employed for four payments, payable in four successive months, in payment of the premium, but left its employment before the first payment became due, leaving no funds in its hands to pay the same, payment to the solicitor who secured assured's application was not payment to the insurer, in the absence of evidence that said solicitor had authority, either real or apparent, to waive the terms of the policy and collect the premium, or of waiver or ratification by insurer.

2. PRINCIPAL AND AGENT—SCOPE OF AGENCY—"APPARENT AUTHORITY."

The "apparent authority" of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing.

3. INSURANCE—AGENCY—STATUTES—CONSTRUCTION.

In an action on a life insurance policy by the beneficiary, where there was no question as to the agent's authority to solicit the insurance, but the scope of his agency and whether he had authority to collect the premium, under the circumstances, was in controversy, 2 Comp. Laws 1915, § 9305, defining the status of persons soliciting life insurance and providing that in any controversy between assured or beneficiary and insurer they should be regarded as agents of insurer and not of assured, *held*, not applicable.

BIRD, C. J., and FELLOWS and KUHN, JJ., dissenting.

Error to Wayne; Williams (W. B.), J., presiding. Submitted January 31, 1919. (Docket No. 38.) Decided July 17, 1919.

Assumpsit by Hattie Randall against the Travelers Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Reversed.

*Vandeveer & Foster*, for appellant.

*Dwyer & Dwyer*, for appellee.

STONE, J. On October 16, 1916, the defendant issued an accident policy to plaintiff's son, Orrin B. Randall, naming the plaintiff as the beneficiary, in the event of his death. The insurance was solicited by one Frank D. Tubbs on behalf of the defendant. Said Tubbs testified relative to his authority, that he had been a representative of the defendant between 10 and 11 years, handling the railroad branch of business for defendant; also as follows:

"I live in Durand and write applications for insurance for the Travelers Insurance Company. I do not issue the policies but keep a record of those that are

issued at my solicitation. I have a record of having issued insurance policy marked exhibit 2 to Mr. Randall * * * and I solicited the insurance from Mr. Randall."

The amount of the policy was $1,000. The annual premium therefor was $17. The insured executed an order on the paymaster of the Grand Trunk Railway Company, by whom he was employed, directing the said paymaster to deduct from his wages $4.25 monthly for four successive months, commencing with November, 1916, and to remit said amounts to the defendant company in payment of said premium. The order in question was as follows:

"October 16, 1916.

"Order for $17.00. (Sum of four premiums for separate insurance periods.)

"To the Paymaster Grand Trunk R. R. Company.

"Will pay to the Travelers Insurance Company, Hartford, Connecticut, the amounts of four premiums for separate insurance periods, as follows:

"First premium 4.25 Dollars, to be paid and deducted from my wages, month of November, 1916.

"Second premium 4.25 Dollars, to be paid and deducted from my wages, month of December, 1916.

"Third premium 4.25 Dollars, to be paid and deducted from my wages, month of January, 1917.

"Fourth premium 4.25 Dollars, to be paid and deducted from my wages, month of February, 1917.

"I agree that the payments named in this order are premiums for separate consecutive periods of three months each; and each shall apply only to its corresponding insurance period under a policy of accident insurance bearing the number shown on the margin of this order and only as therein provided.

"Signature of Applicant,

"ORRIN B. RANDALL.

"Occupation, Car Repairer.

"Where employed, Grand Trunk Ry.   Fisher."

The relevant provisions of the policy are as follows:

"Railway and Shop Employees' Accident Policy
"(R)

"THE TRAVELERS INSURANCE COMPANY
"Hartford, Connecticut,

"In Consideration of the premiums to be paid as hereinafter provided (the total premiums for Four periods being $17.00), and subject to the provisions and limitations hereinafter contained, Does Hereby Insure Orrin B. Randall under classification (Medium) by occupation a Car Repairer against loss resulting from bodily injuries, effected directly and independently of all other causes, through external, violent and accidental means, as stated in the Schedule of Indemnities, for the period or periods hereinafter specified, the first commencing on the 16th day of October, 1916, and each beginning and ending at twelve o'clock noon, Standard time of the place where Insured resides.

"The Principal Sum of This Policy in the First Year is $1,000.00.

"2. No statement made by the applicant for insurance not included herein shall avoid the Policy or be used in any legal proceeding hereunder. No agent has authority to change this Policy or to waive any of its provisions. No change in this Policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon.

"(d) The payments directed in a note or order (copy of which is attached hereto) given with the application for this policy are premiums for separate and consecutive periods and each applies only to its corresponding insurance period, as specified on the note or order. Injuries fatal or non-fatal, sustained during any period of which the respective premium shall not have been actually paid shall not be covered by this insurance, except in case of a just claim for an injury sustained before the pay-day of the month in which first or second premium shall be payable according to the note or order; but this insurance shall not cover an injury in any such case if the insured shall not have earned in the month designated in the note or order sufficient wages to pay said first or second premium as the case may be, nor if he shall have collected or disposed of the wages earned in the month so that there shall not remain sufficient for the payment of said premium. Strict compliance on the part of the

Insured and Beneficiary with all the provisions of this policy is a condition precedent to recovery hereunder.

"(e) The copy of the application endorsed hereon is hereby made a part of this contract.

"JOHN E. AHERN,                    L. V. BUTLER,
    "Department Secretary.              President.

"Countersigned by...................

    "Examined.........................."

The application contained the following provisions:

"I hereby apply for an accident policy, to be based upon the order given herewith, and upon the following statement of facts. * * * I wish to pay the premium as provided in note or order of even date herewith. I agree that the policy shall remain in force after the first insurance period only as continued by payments of premium for the consecutive periods following, as provided in said note or order.

"Total premiums $17.00."

On October 18, 1916, two days after the policy of insurance was issued to him, the assured left the employment of the Grand Trunk Railway Company and went to the home of his sister in the city of Detroit, remaining unemployed until about October 30, 1916, when he went to work for the Michigan Central Railroad Company. Upon the trial it was testified to by the plaintiff, who was the mother of said assured and the beneficiary under the policy, and also by the sister of the assured, that about the last of October, 1916, a person representing himself to be an agent of the defendant, called at the home of the sister in Detroit and there in their presence had an interview with said Orrin B. Randall relating to his policy and the premium provided for therein; that it appearing that the assured was no longer in the employment of the Grand Trunk Railway Company it was arranged that the assured should pay the entire premium of $17 to said person who represented that he would give his receipt therefor, and later send to the assured an "official receipt" of the defendant; that the premium of

$17 was then and there paid by said Orrin B. Randall to said person, and that the latter wrote out at length and gave to said assured a receipt for $17 in payment of such premium, and signed such receipt as the agent of defendant.  The plaintiff in her testimony claimed to identify said person as the said Frank D. Tubbs.

Tubbs was sworn as a witness in the case, and he positively and specifically denied that he had ever called at the house of the sister, or that he had ever at any time or place received or collected any sum of money from the said Orrin B. Randall, or that he had ever seen him after he took the application at Durand.

On November 22, 1916, the dead body of the said Orrin B. Randall was recovered from the Detroit river, and there was testimony tending to show that death was due to drowning.  The plaintiff in due season made claim against the defendant for $1,000, the amount of the insurance.  Defendant refused payment of any amount because of the nonpayment of the premium, by the person, and to the company, and in the manner set forth in the policy and order.  It should be stated that the receipt was not produced at the trial, the plaintiff testifying that it was not found among the effects of the deceased, nor was the pocketbook found, in which she testified that her said son had placed the receipt when he took it.

The manager of the railroad and ticket department of the defendant testified that he had supervision over the accident and health business written upon railroad employees insured upon the four-period plan of the defendant.  He identified the policy issued and testified that no premium had ever been paid to the defendant for, or on account of the policy so issued to Orrin B. Randall; he produced the original list sent from his office to the paymaster of the Grand Trunk road at Detroit, showing that the first payment on

Mr. Randall's policy was due from his November wages, and which the paymaster did not collect, stating that the reason why, was that the said Randall was out of service; and he testified as follows:

"*Q.* What person or persons were authorized to receive premium payments under the policy issued to Orrin B. Randall?

"*A.* Mr. E. W. Hotchkiss, paymaster of the Grand Trunk road.

"*Q.* State whether or not any person other than he had any authority to receive premium payments in behalf of the company under that policy?

"*A.* No other person had any authority to make collections, as the order was drawn upon the paymaster of the road."

The following colloquy between court and counsel shows the position and claims of the parties:

"*Mr. Vandeveer:* Mr. Dwyer, it is my understanding that you don't claim that the Grand Trunk paid the premium?

"*Mr. Dwyer:* No, we don't claim the Grand Trunk paid any of it.

"*Mr. Vandeveer:* My understanding is, it is your claim the deceased having left the employ of the Grand Trunk during the month of October, that he drew his wages for the work he had performed. After leaving the service he had no money coming to him from the Grand Trunk; the Grand Trunk did not have any money in its possession to pay the premium?

"*Mr. Dwyer:* Yes.

"*Mr. Vandeveer:* Your contention is, what premium was paid, was paid by the deceased to the agent of the company; that this Orrin B. Randall worked until about the 18th of October, 1916, and drew his pay by discharge checks, and that when he left the service he had no money coming to him, so that when this order for the quarterly premium of $4.25 was presented in November, he had no funds with which to pay the premium. That is true, Mr. Dwyer?

"*Mr. Dwyer:* Yes it is true, there was no funds in the hands of the Grand Trunk.

"*The Court:* It is conceded the order was presented to the paymaster?

"*Mr. Dwyer:* So far as we are concerned.

"*The Court:* I think it would devolve on the plaintiff to show the premium was paid.

"*Mr. Dwyer:* Unquestionably.

"*The Court:* You admit the Grand Trunk did not pay it?

"*Mr. Dwyer:* Yes.

"*Mr. Vandeveer:* My understanding of the testimony is, it discloses now, that the plaintiff takes the position that the deceased paid it, and not the Grand Trunk.

"*Mr. Dwyer:* Yes, that is true."

The testimony of the plaintiff, and the sister of deceased, was all admitted against the objection of the defendant, the court stating:

"Well, I understand that this testimony is all to be stricken out in the event you do not show the authority of the man to collect premiums for the defendant company.

"*Mr. Dwyer:* Yes, I think that is the understanding."

There was no further testimony upon the subject of authority in Tubbs, except that he testified that in two instances where, by the terms of the policies, the premiums were payable by notes, he had authority to collect the premiums, give his personal receipt therefor, remit the money to the defendant, whereupon the company would send a regular receipt therefor. There was no evidence that the deceased had any notice or knowledge of these two instances.

At the close of the evidence the defendant's attorney moved the court for a directed verdict for the defendant for the following reasons:

1. Because there was no competent proof that a payment of the premium covering the insurance in force, was made to an agent or representative of the defendant company, who was duly authorized by the defendant to accept and receive the same.

2. Because there was not paid to the defendant any money covering the insurance in force.

3. Because a payment of the premium covering the insurance in force, even to Tubbs, was made to him as an individual, and the same was not received nor accepted by the defendant, and never reached it, and such a method of payment was unauthorized by the defendant company, and not in accordance with the terms and provisions of the policy in question, and altered and varied the terms and methods of payment, without the knowledge and consent of the defendant company by its duly authorized officers and agents.

The motion was denied and defendant duly excepted.

The case was submitted to the jury and in its charge the court said:

"If you find by a preponderance of the evidence that Mr. Tubbs, the agent of the defendant who took the application of Mr. Randall for the insurance policy issued to him, was paid $17.00 in the latter part of October, 1916, at the house of Mrs. Horton in Detroit, by Mr. Randall to apply as payment on the premium of said policy, I charge you that the payment to Tubbs would be payment to the defendant insurance company, and the policy would not be rendered void, on the theory that the premium was not paid, and the plaintiff would be entitled to recover the face of the policy, $1,000.00.

"Now, you will notice I have said, if that payment was made to Tubbs, then it was a payment to the company, because I charge you, that Mr. Tubbs was the agent of the company, and if he was the agent that took the order for this policy, and the insured paid him the premium, that would be a payment to the insurance company."

The trial resulted in a verdict and judgment for the plaintiff in the sum of $1,000 damages. The defendant brings error, and error is assigned upon the refusal of the court to direct a verdict for the defendant for the reasons stated, and upon that part of the court's charge above set forth.

Counsel for defendant, in his brief, says:

"All of the assignments of error relate to the one issue, and that is: Was the payment of the insurance premium (if paid) to Tubbs a payment to the company, contrary to the agreement in writing of the manner and method of the payment, to be paid by whom, and received by whom?"

Special attention is called to the provision in the policy that—

"No agent has authority to change this policy, or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company, and such approval be endorsed hereon."

Whether or not the premium was paid to Tubbs in the manner claimed by the plaintiff, presented a question of fact. Conceding the fact to be as claimed by the plaintiff, the defendant's position still is that it was not a payment to the defendant, nor to one of its agents duly authorized to receive the payment of premium, and, if paid to him, was not received by the defendant, and that the terms of the policy were not waived by the defendant, nor was such payment to Tubbs authorized or ratified by defendant. The policy also contained the provision that:

"Strict compliance on the part of the insured and beneficiary with all the provisions of the policy is a condition precedent to recovery hereunder."

It is urged that there was a special mode provided for the payment of the premium which was departed from; that one of the reasons for making such a provision for the payment of the premium was to avoid such disputes as the parties are here involved in; that the defendant provided that the method should be left in its own hands, and directly contracted that it should be placed there; and that Tubbs was not authorized to bind the company in the matter, being merely a

solicitor for policies. Defendant's counsel cites 2 Bacon on Life & Accident Insurance (4th Ed.), §§ 469, 640; *Michigan Shingle Co.* v. *Insurance Co.*, 91 Mich. 441, and many authorities from other jurisdictions, none of which are directly in point, or decisive of the identical question here involved.

Counsel for the plaintiff argue that the question is not what the authority of the agent actually was, but what authority he was apparently clothed with by the defendant, and they cite a number of Illinois cases, of which the leading one is *The Eclectic Life Ins. Co.* v. *Fahrenkrug*, 68 Ill. 463. In that case an agent employed by an insurance company to take applications for insurance took the same, and afterwards delivered the policy and collected the first half-yearly premium, his authority so far not being disputed, and he afterwards represented himself as having authority to receive the premium for the second half year before the same was due, and received the same, giving a receipt for both payments, and the assured, through her agent, on inquiry at the office of the company, was informed by a clerk then in charge that the payment was all right, and could not be refunded, and the company, after notice, never repudiated such payment and notified the assured thereof, until after the death of the party whose life was insured; it was held that such company could not avoid payment of the policy on the ground that the agent had no authority to receive the second payment. Also it was held that an insurance company will be bound by the acts of its agent if within the powers he is held out to the public as possessing. Also, that if a premium on a policy of life insurance be paid to, and accepted by an agent who is apparently authorized by the company to receive it, the payment will be sufficient, whether it be in conformity with the terms of the policy or not. The case is readily distinguished from the instant case,

and the real question here is, What was Tubbs' apparent authority?

Plaintiff's counsel also cite *Blake* v. *Insurance Co.,* 194 Mich. 589, and *Power* v. *Insurance Co.,* 121 Mich. 364, neither of which is decisive of the question here involved.

There is no question that Tubbs was the agent of the company for the purpose of taking and submitting the application for insurance. The infirmity in the plaintiff's case is that there was no evidence of his authority, either real or apparent, to waive the terms of the policy, and collect the premium. There was no evidence of any custom, or practice even, to so act, and certainly none of a waiver or ratification by the defendant.

It would have been material and competent to have shown that defendant had waived the terms of the policy as to payment of the premium; but there was no evidence tending to show a waiver. The "apparent authority" of an agent is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. *Dispatch Printing Co.* v. *National Bank of Commerce,* 109 Minn. 440 (124 N. W. 236, 50 L. R. A. [N. S.] 74).

Evidence of "apparent authority" of Tubbs to collect premiums was wholly lacking here. The two instances testified to were special cases, and not known to the assured.

In *Cook* v. *Insurance Co.,* 84 Mich. 12, it was held that the acceptance of a policy of insurance which expressly negatives the right of the agent to waive or alter any of its conditions, estops the assured from setting up or relying upon any action on the part of the agent in opposition to such prohibition; citing *Cleaver* v. *Insurance Co.,* 65 Mich. 527, 532. See, also, *Mallory* v. *Insurance Co.,* 97 Mich. 416. Con-

tracts of insurance are construed by the same rules as other contracts.

In *Barry* v. *Insurance Co.*, 62 Mich. 424, it was said by Chief Justice CAMPBELL, speaking for the court:

"An agent can only bind a company where he has either real or apparent authority," citing *Security Insurance Co.* v. *Fay*, 22 Mich. 467; *Reynolds* v. *Insurance Co.*, 36 Mich. 131; *Hartford Fire Ins. Co.* v. *Reynolds*, 36 Mich. 502.

The trial court erred in that part of the charge above quoted. It was to the effect that if Tubbs received the premium, that was payment to the company. Such unqualified charge was prejudicial error.

Counsel for plaintiff invoke the provisions of section 9305, 2 Comp. Laws 1915. It is an act defining the status of persons soliciting life insurance, and reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary, and the company issuing any policy upon such application, be regarded as the agent of the company, and not the agent of the assured."

We are of the opinion that this statute is not pertinent here. There is no question here that Tubbs was the agent of the company in soliciting the insurance, and not the agent of the assured. The question is as to the scope of his agency, and whether he had authority to collect the premium, under the circumstances.

We had occasion to refer to this statute in *Kane* v. *Insurance Co.*, 204 Mich. 357. We think that upon this record the trial court should have directed a verdict for the defendant.

The judgment below is reversed with costs to appellant, and a new trial ordered.

OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred with STONE, J.

BIRD, C. J. (*dissenting*).  I am of the opinion that
the trial court was right in charging the jury that:

"If you find by a preponderance of the evidence
that Mr. Tubbs, the agent of the defendant who took
the application of Mr. Randall for the insurance policy
issued to him, was paid $17.00 in the latter part of Oc-
tober, 1916, at the home of Mrs. Horton in Detroit, by
Mr. Randall to apply as payment on the premium of
said policy, I charge you that the payments to Tubbs
would be payment to the defendant insurance com-
pany, and the policy would not be rendered void, on
the theory that the premium was not paid, and the
plaintiff would be entitled to recover the face of the
policy, $1,000.

"Now, you will notice I have said, if that payment
was made to Tubbs, then it was a payment to the
company, because I charge you, that Mr. Tubbs was
the agent of the company, and if he was the agent that
took the order for this policy, and the insured paid
him the premium, that would be payment to the in-
surance company."

The question, whether the premium was paid by
Randall to Tubbs, was one of fact made so by con-
flicting evidence.  But it is said that if payment were
made to Tubbs it would not bind defendant, as the
contract provided it should be paid by the paymaster
of the Grand Trunk Railway Company, the insured's
employer.  The premium was not paid by the pay-
master of the railway company for the very good rea-
son that when it became due Randall was not in its
employ and it owed him nothing.  We think it can be
said, without doing violence to the contract, that it
was not contemplated by either party that the provi-
sion for payment by the paymaster out of Randall's
wages should last or be in force any longer than his
employment lasted.  After the employment was ter-
minated, the situation was no different than it would
have been had the contract never contained such a pro-
vision.  If Randall wanted to keep the policy alive, it

was then his duty to pay the premium to some agent of the company. He accordingly paid the same to the agent who solicited the insurance from him.

Proof that Tubbs solicited and secured the insurance made him the agent of the company, as between the company and the beneficiary, to accept payment of the premium. 2 Comp. Laws 1915, § 9305. This section provides:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

It is said the section does not apply to this controversy. When the legislature says that it shall apply to any controversy between the insurance company and the beneficiary, I think it includes this controversy. An insurance company could hardly suspend the operation of this statute by a contract stipulation with the insured. If the stipulation as to payment had any force after the employment terminated, it should be construed as having been made subject to the provisions of this statute. The trial court was right in its view of the law, and the judgment should be affirmed.

FELLOWS and KUHN, JJ., concurred with BIRD, C. J.